Sonia Torres González, demandante y recurrida, *v.* Star Kist Caribe, Inc., demandada y recurrente.

*Número:* RE-90-587          *Resuelto:* 28 de enero de 1994

*Miguel A. Montalvo*, abogado de la recurrente; *Claribel Pabón Durant*, abogada de la recurrida.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

En el presente caso se recurre de una sentencia parcial en la cual el foro de instancia determinó que en relación con el derecho a reinstalación del obrero al amparo del Art. 5A de la Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 7, "los períodos en los cuales el [Fondo del Seguro del Estado (F.S.E.)] autoriza al empleado u obrero a regresar a su trabajo bajo tratamiento médico ambulatorio tienen un efecto interruptor de estos doce (12) meses". A continuación reseñaremos los hechos que dieron lugar a la controversia.

# I

En 1985 la Sra. Sonia Torres González comenzó a trabajar para la Star Kist Caribe, Inc. (en adelante Star Kist), en la tarea de limpiar pescado. Para el 6 de julio de 1987 comenzó a quejarse de que estaba sufriendo de una alergia en la parte superior de su pierna izquierda, por lo que acudió a la enfermería de la compañía. Allí fue evaluada por el médico, quien la mantuvo en tratamiento con un especialista de la piel. Ambos recomendaron que se le cambiara del área de trabajo debido a que la humedad a la que estaba expuesta continuamente podía empeorar su situación. Al no sentir mejoría, la empleada se reportó al Fondo del Seguro del Estado (en adelante F.S.E.) el 24 de febrero de 1988. Éste le ordenó que se mantuviera en descanso. El 17 de mayo de 1988 regresó a su empleo mientras recibía tratamiento médico (C.T.) del F.S.E.[1] El 8 de agosto de 1988, el F.S.E. le ordenó nuevamente descanso, lo cual hizo hasta el 26 de octubre de 1988, fecha en que regresó al empleo bajo tratamiento médico (C.T.). Finalmente, y por orden del F.S.E., la empleada estuvo fuera de su empleo durante el período de 9 de febrero de 1989 al 31 de agosto de 1989, fecha en la que se le dio de alta definitivamente. Cuando la empleada acudió a su trabajo, fue informada de que su puesto había sido ocupado debido a que, como había transcurrido un (1) año desde la fecha del accidente, el patrono no venía obligado a reservarle el empleo. El despido fue efectivo el 1ro de abril de 1989.

La señora Torres González presentó demanda contra la Star Kist por no haberla reinstalado luego de cesar su incapacidad. Ambas partes solicitaron que se dictara sentencia sumaria. La parte demandante alegó en su moción, que el Art. 5a de la Ley de Compensaciones por Accidentes

---

[1] Este tratamiento médico se conoce como C.T. o "Continuación de Tratamiento".

del Trabajo, *supra*, se refería a la reinstalación de empleados que han estado incapacitados para trabajar por un período de más de un (1) año. La demandante distinguió su caso de esa situación, debido a que ella había trabajado durante varios meses, mientras recibía tratamiento médico del F.S.E. (C.T.). Por su parte, la demandada Star Kist fundamentó su solicitud en el mismo artículo e indicó que cuando la demandante solicitó su reinstalación al empleo había transcurrido más de un (1) año desde que ocurrió el accidente del trabajo.

El tribunal de instancia dictó sentencia parcial ordenando a la Star Kist a reponer a la señora Torres González en su empleo. Indicó que el período de doce (12) meses al que se refiere la ley ha de ser de vacante continua, lo que no sucedió en este caso. Expresó, además, que los accidentes intercurrentes tienen el efecto de interrumpir tal término.

Inconforme con la decisión, la demandada Star Kist presentó recurso de revisión. Alegó, como único error, que el foro de instancia se equivocó al ordenar la reposición de la empleada en su empleo a pesar de haber transcurrido más de doce (12) meses desde que tuvo el accidente y fue despedida.

Decidimos revisar y expedimos el recurso.

## II

Uno (1) de los principios establecidos en materia de despidos es su justificación cuando un empleado está incapacitado física y mentalmente para realizar las funciones o para asistir regularmente a su empleo, por las razones que sean. J.L. Verdiales Morales y J.J. Santiago Meléndez, *Reserva de empleo al obrero incapacitado por accidente laboral: requisitos bajo el Artículo 5A de la Ley de Compensaciones por Accidentes del Trabajo*, 61 Rev. Jur. U.P.R. 59 (1992); W.J. Holloway y M.J. Leech, *Employment Termina-*

*tion: Rights and Remedies*, Washington, Ed. B.N.A., 1985, págs. 262, 287–288; J.R. Redeker, *Discipline, Policies and Procedures*, Washington D.C., Ed. Bureau of National Affairs, 1983, págs. 182–192.

Sin embargo, varias jurisdicciones norteamericanas han establecido una excepción para los casos en que un obrero se incapacita temporalmente por causa de un accidente o enfermedad ocupacional. Véase, en general, 2 *Larson's Workmen's Compensation Law* Sec. 68.36(a) (1990). Esta protección está recogida en nuestra Ley de Compensaciones por Accidentes del Trabajo, la cual instrumenta el derecho constitucional de todos los trabajadores en Puerto Rico a recibir protección contra riesgos para la salud e integridad personal —Art. I, Sec. 16, Const. E.L.A., L.P.R.A., Tomo 1— eje central de todo el esquema jurídico establecido por el estado para la protección de éstos en sus talleres de trabajo. R.N. Delgado Zayas, *Apuntes para el estudio de la legislación protectora del trabajo en el derecho laboral puertorriqueño*, San Juan, Pubs. Laborales P.R., 1989, pág. 187. Entre las medidas que dicha ley establece para proteger al trabajador está la disposición contenida en el Art 5a, *supra*,([2]) el cual dispone dos (2) tipos de pro-

---

([2]) El Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 7, dispone:

"En los casos de inhabilitación para el trabajo de acuerdo con las disposiciones de est[a Ley], el patrono vendrá obligado a reservar el empleo que desempeñaba el obrero o empleado al momento de ocurrir el accidente y a reinstalarlo en el mismo, sujeto a las siguientes condiciones:

"(1) que el obrero o empleado requiera al patrono para que lo reponga en su empleo dentro del término de quince días, contados a partir de la fecha en que el obrero o empleado fuere dado de alta, siempre y cuando que dicho requerimiento no se haga después de transcurridos doce meses desde la fecha del accidente;

"(2) que el obrero o empleado esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicite del patrono su reposición; y

"(3) que dicho empleo subsista en el momento en que el obrero o empleado solicite su reposición. (Se entenderá que el empleo subsiste cuando el mismo está vacante o lo ocupe otro obrero o empleado. Se presumirá que el empleo estaba vacante cuando el mismo fuere cubierto por otro obrero o empleado dentro de los treinta días siguientes a la fecha en que se hizo el requerimiento de reposición.)

"Si el patrono no cumpliere con las disposiciones de esta sección vendrá obligado a pagar al obrero o empleado o a sus beneficiarios los salarios que dicho obrero o

tección para el obrero lesionado o enfermo. En primer lugar, el patrono está obligado a reservar el empleo que desempeñaba el trabajador al momento del accidente o de la enfermedad,([3]) y en segundo lugar, permite que el obrero solicite la reinstalación a su empleo, siempre y cuando cumpla con los requisitos siguientes:

1. que el accidente o enfermedad ocupacional inhabilite al empleado para trabajar;

2. que el empleado se acoja a los beneficios de la Ley Núm. 45, *supra*;

3. que dentro de los quince (15) días de haber sido dado de alta definitivamente, autorizado a trabajar, el empleado solicite al patrono reposición en su empleo;

4. que dicho requerimiento de reposición se haga dentro de los doce (12) meses de haber ocurrido el accidente o enfermedad;

5. que al solicitar su reposición, el empleado esté física y mentalmente capacitado para desempeñarse en las funciones del empleo que ocupaba;

6. que dicho empleo subsista al momento en que el trabajador solicita su reposición.

Todos estos requisitos tienen que cumplirse para que el trabajador esté protegido. Op. Sec. Trab. Núm. 1990–5.

El Art. 5a, *supra*, fue adicionado a la Ley de Compensaciones por Accidentes del Trabajo mediante la Ley Núm. 48 de 18 de abril de 1950, Leyes de Puerto Rico 127. El término establecido en dicha ley para solicitar reinstalación era de seis (6) meses. El 29 de marzo de 1971 se presentó el P. del S. 947 para eliminar por completo el término para solicitar reinstalación. 25 Diario de Sesiones de la Asamblea Legislativa (Senado) 644 (1971). Bajo este proyecto, el empleado lesionado hubiese podido solicitar reinstalación

---

empleado hubiere devengado de haber sido reinstalado, además le responderá de todos los daños y perjuicios que le haya ocasionado. El obrero o empleado, o sus beneficiarios, podrán instar y tramitar la correspondiente reclamación de reinstalación y/o daños en corte por acción ordinaria o mediante el procedimiento para reclamación de salarios, establecido en [la Ley Núm. 2 de 17 de octubre de 1961]."

([3]) Bajo la Ley de Compensaciones por Accidentes del Trabajo no hay diferencia entre un "accidente" y una "enfermedad". *Odriozola v. S. Cosmetic Dist. Corp.*, 116 D.P.R. 485, 501 (1985).

en su empleo dentro de los quince (15) días " 'contados a partir de la fecha en que el obrero o empleado sea notificado por el Administrador del Fondo del Seguro del Estado que ha sido dado de alta' ", *sin límite de tiempo alguno.* Verdiales Morales y Santiago Meléndez, *supra*, pág. 60. También se presentó el P. del S. 844 de 20 de abril de 1971, el cual iba dirigido a aumentar de seis (6) a doce (12) meses el período para solicitar reinstalación en el empleo, y concederle al obrero una causa de acción en daños y perjuicios, y el pago de los salarios dejados de devengar por el incumplimiento del patrono de las disposiciones del Art. 5a, *supra*. Ninguna de las dos (2) piezas legislativas fue aprobada. Íd.

■ El 8 de marzo de 1973 se presentó el P. de la C. 398, el cual se convirtió en la Ley Núm. 101 de 5 de junio de 1973, Leyes y Resoluciones de Puerto Rico 459. Dicha ley enmendó el Art. 5a, *supra*, para aumentar de seis (6) a doce (12) meses el término para solicitar la reinstalación al empleo y reconocer al obrero una causa de acción en daños y perjuicios por cualquier incumplimiento del patrono de dicho artículo, más los salarios dejados de recibir. Además, autorizó al trabajador a realizar su reclamación mediante la vía ordinaria o el procedimiento sumario para reclamación de salarios establecido en la Ley Núm. 2 de 17 de octubre de 1961 (32 L.P.R.A. secs. 3118–3132). El resto del Art. 5a no sufrió cambio alguno. El propósito de la enmienda referida surge claramente del Informe conjunto de las Comisiones del Trabajo y Asuntos del Veterano y Gobierno de la Cámara de Representantes de 6 de abril de 1973 (27 Diario de Sesiones de la Asamblea Legislativa 1034 (1973)).

El propósito de la medida es aumentar el término de seis a doce meses, después de la fecha del accidente, para solicitar reposición en el empleo que ocupaba originalmente. También requiere el patrono que no cumpla con las disposiciones del aludido Artículo 5A, el pago al obrero o empleado o a sus beneficiarios, de

los salarios que éste hubiere devengado de haber sido reinstalado además de los daños y perjuicios que se le haya ocasionado.

Este proyecto de ley provee específicamente un procedimiento efectivo a utilizarse para que el trabajador que ha sufrido un accidente reclame ser repuesto en su empleo original y señala las sanciones a imponerse al patrono que se negare a hacerlo. Esto es un paso adelante, ya que la ley vigente no establece procedimiento alguno a seguirse en caso de que el patrono se negare a reinstalar a dicho obrero.

Los Departamentos del Trabajo y de Justicia y el Administrador del Fondo del Seguro del Estado recomendaron la aprobación de este proyecto. (Énfasis suprimido.) Verdiales Morales y Santiago Meléndez, *supra*, pág. 61.

Por otro lado, en el informe que rindiera el entonces Secretario del Trabajo, Hon. Luis Silva Recio, de 21 de febrero de 1973, se señala:

La experiencia ha demostrado que el término de seis meses que establece la ley actual es muy corto y no corresponde a la realidad que se vive con respecto a los casos de enfermedades ocupacionales y lesiones sufridas como resultado de accidentes ocurridos en el trabajo. Es bien conocido el hecho de que en una gran proporción de los casos el proceso de recuperación se extiende por períodos mayores de seis meses. Esto expone a un gran número de trabajadores que han sufrido accidentes del trabajo a perder sus empleos por tal razón.

En vista de lo anterior, la pieza legislativa que se propone amplía el período de reserva de empleo de seis a doce meses. Esto tendría el efecto de reducir el riesgo de que pierda su empleo un trabajador que ha sufrido un accidente del trabajo y cuyo período de recuperación se prolongue por más de SEIS MESES. Esto a su vez brindaría mayor tranquilidad y seguridad al trabajador lesionado al asegurarle su empleo por lo menos durante un año. (Énfasis suprimido.) Verdiales Morales y Santiago Meléndez, *supra*, págs. 61–62.

Del anterior historial legislativo surge, con meridiana claridad, que la solicitud de reinstalación tiene que hacerse dentro de los doce (12) meses[4] a partir de la fecha cuando

_____

[4] Este término de reserva de empleo, conforme al Art. 8 del Código Civil, 31 L.P.R.A. sec. 8, es de trescientos sesenta (360) días, por lo que no es equivalente al período de un (1) año o trescientos sesenta y cinco (365) días. El mencionado artículo

ocurrió el accidente o la enfermedad laboral. Luego de transcurrido este término, el patrono puede despedir al empleado, si éste aún no ha sido dado de alta del F.S.E. La legislatura estimó razonable dicho período para proteger el derecho del trabajador a retener su empleo, estableciendo así un balance entre los derechos del patrono y los del empleado lesionado. Ésta no tuvo la intención de establecer una obligación al patrono de reservar el empleo del obrero indefinidamente. Pudo así hacerlo al considerar el P. del S. 947, *supra*, y no lo hizo. Íd.

En el caso que nos ocupa, la empleada no había sufrido un accidente intercurrente como determinó el tribunal de instancia.([5]) Esta, al momento de ser cesanteada de su empleo, aún estaba bajo tratamiento médico en el F.S.E. (C.T.). Es decir, se encontraba en el período de recuperación inicial, que es aquél que se inicia una vez el empleado se presenta para tratamiento luego de ocurrir un accidente del trabajo, o cuando el empleado se queja por primera vez de alguna condición relacionada con su trabajo, y termina al ser dado de alta curado y sin incapacidad, o porque se reconoce la existencia de una incapacidad permanente que no ha de mejorar con más tratamiento. *Ríos Rivera v. Comisión Industrial*, 108 D.P.R. 808, 814 (1979); Art. 3 de la Ley Núm. 45, *supra*.

La demandante alega que el período de doce (12) meses de reserva de empleo fue interrumpido cuando ésta se reincorporó a su trabajo luego de que el F.S.E. la autorizara a trabajar recibiendo tratamiento médico (C.T.). Y que siendo esto así, ella no se encontraba inhábil para trabajar, por lo cual no le era aplicable lo dispuesto en el Art. 5a, *supra*. Para sustentar su alegación, la demandante sos-

---

dispone:

"Si en las leyes se habla de meses ... se entenderá que los meses son de treinta días."

([5]) Un *accidente intercurrente* es una lesión subsiguiente de un obrero, sea ésta una agravación de otra anterior o una lesión distinta. *Admor., F.S.E. v. Comisión Industrial*, 100 D.P.R. 363, 365 (1972).

tiene que la Ley de Compensaciones por Accidentes del Trabajo es una ley de carácter reparador y como tal debe interpretarse liberalmente a favor del empleado. No estamos de acuerdo.

Si bien es cierto que las leyes remediales deben interpretarse con liberalidad y amplitud para lograr sus propósitos (*Beauchamp v. Holsum Bakers of P.R.*, 116 D.P.R. 522, 526 (1985)) y que la Ley de Compensaciones por Accidentes del Trabajo, por ser un estatuto de carácter remedial, debe interpretarse liberalmente y así resolver toda duda a favor del obrero (*Vélez, Admor. v. Comisión Industrial*, 91 D.P.R. 480, 485 (1964); *Agosto Serrano v. F.S.E.*, 132 D.P.R. 866 (1993)), no es menos cierto que cuando la ley es clara y libre de toda ambigüedad debe aplicarse tal como se expone, sin que pueda válidamente menospreciarse su letra so pretexto de cumplir su espíritu. Art. 14 del Código Civil, 31 L.P.R.A. sec. 14; *Ferretería Matos, Inc. v. P.R. Tel. Co.*, 110 D.P.R. 153, 156 (1980).

En el caso de autos, la fecha del accidente del trabajo fue el 6 de julio de 1987,[6] por lo que el término de trescientos sesenta (360) días para reserva de empleo establecido en el Art. 5a, *supra*, venció el 29 de junio de 1988. Por consiguiente, el término de doce (12) meses para reserva de empleo había expirado, tanto a la fecha del despido de la empleada, el 1ro de abril de 1989, como a la fecha en que fue dada de alta por el F.S.E., el 31 de agosto de 1989. La empleada tampoco estaba habilitada para trabajar para la fecha en que ocurrió el despido, por cuanto todavía no había sido dada de alta por el F.S.E.; de hecho, mientras se encontraba en tratamiento médico trabajaba (C.T.), tuvo que ser enviada, en varias ocasiones, a descansar. La determinación del F.S.E. de autorizarla a trabajar mientras recibía tratamiento médico (C.T.) no constituyó el alta definitiva que dispone el Art. 5a, *supra*.

---

[6] Esta fue tomada por el Fondo del Seguro del Estado como la fecha del surgimiento de la enfermedad.

■ Reiteradamente hemos resuelto que la aplicación e interpretación administrativa de una ley por aquellos organismos particularmente encargados de ponerla en vigor y velar porque sus fines se cumplan, de ordinario, merecen la consideración y el respeto de los tribunales, en vista de la vasta experiencia y conomiento de estos organismos. *A.R.P.E. v. Ozores Pérez*, 116 D.P.R. 816, 821 (1986); *Agosto Serrano v. F.S.E.*, supra. Tanto el Procurador del Trabajo del Departamento del Trabajo y Recursos Humanos como el F.S.E. han interpretado que el regreso temporal de un empleado a su puesto no interrumpe el término de doce (12) meses que establece el Art. 5a, *supra*, para que el patrono obligatoriamente le reserve el empleo. Véanse: Op. Proc. Trab. Núm. 11056 de 5 de octubre de 1981 y Op. Proc. Trab. Núm. 13519 de 10 de junio de 1991. Además, véanse: Consulta Núm. C-89-15 de 6 de julio de 1989 y Consulta Núm. 90–30 de 15 de agosto de 1990, ambas del F.S.E.

■ No cabe duda que el Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo, *supra*, tiene un propósito loable por demás. Éste le garantiza al trabajador que se incapacita temporalmente como consecuencia de un accidente o enfermedad ocupacional, tranquilidad de espíritu por cuanto, cumplidos ciertos requisitos, éste puede solicitar la reinstalación en su empleo.

No obstante lo anterior, y como expresáramos en *Rojas v. Méndez & Co., Inc.*, 115 D.P.R. 50, 54 (1984), al interpretar la cláusula de reserva de empleo bajo la Ley de Beneficios de Incapacidad No Ocupacional (S.I.N.O.T.), disposición casi idéntica al Art. 5a;[7] consciente nuestro legislador de la carga y el gravamen económico que podría resultar para el patrono —quien se ve obligado a reservar el empleo al obrero— estableció, mediante lenguaje claro y

---

[7] La Ley de Beneficios de Incapacidad No Ocupacional establece un término de seis (6) meses para la reserva de empleo. Véase Sec. 1 de la Ley Núm. 137 de 26 de junio de 1968 (11 L.P.R.A. sec. 203(a)).

preciso, unos requisitos y unos períodos de tiempo para el ejercicio del derecho a la reinstalación.[8]

El texto claro de una ley es la expresión por excelencia de la intención legislativa. *Rodríguez Rodríguez v. Gobernador*, 91 D.P.R. 101, 107 (1964). Como expusimos en *Rivera Coll v. Tribunal Superior*, 103 D.P.R. 325, 331 (1975), "[e]n aras de la liberalidad no podemos ir más allá de la ley".

■ Por todo lo anterior, resolvemos que el hecho de que un empleado que se encuentra incapacitado temporalmente por razón de enfermedad o accidente ocupacional regrese al trabajo mientras se encuentra en tratamiento médico bajo el F.S.E. (C.T.), no tiene el efecto de interrumpir el término de doce (12) meses que establece el Art. 5a, *supra*. *Este período es uno de caducidad que no puede interrumpirse de forma alguna.*

*Se dictará sentencia revocando la dictada por el tribunal de instancia.*

El Juez Asociado Señor Fuster Berlingeri disintió con opinión escrita.

— O —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri.

Contrario a lo que piensa la mayoría en el caso de autos,

---

[8] Precisamente, en la situación del caso de autos hubiese sido muy oneroso para el patrono poder contratar un empleado que sustituyera la obrera lesionada, debido a que ésta estuvo asistiendo a su trabajo de forma irregular. Esto hubiera requerido tener personal suplente dispuesto a trabajar intermitentemente.

Durante el Año Fiscal 1988–1989, un total de cuarenta y cuatro mil setecientos dieciséis (44,716) trabajadores estaban en tratamiento en descanso y mientras trabajaban (C.T.). De este total, veintitrés mil catorce (23,014) recibían tratamiento mientras trabajaban (C.T.). Estadísticas del Fondo del Seguro del Estado para los Años Fiscales 1978–1979 a 1988–1989.

no creo que el Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 7, claramente requiera que se deniegue el derecho de reinstalación a la trabajadora recurrida.

La situación a la que dicho artículo alude, sin lugar a dudas, es la de un accidente o lesión del trabajo de tal gravedad que el período de tratamiento médico o recuperación del obrero sea de más de doce meses *continuos*. El claro tenor del texto de la ley y su historial legislativo aluden sin ambigüedad *solamente* a esa situación. Si otras situaciones están cubiertas o no por el Art. 5a, *supra*, es materia de *interpretación*.

El caso de marras presenta una situación distinta de la que está claramente considerada en el Art. 5a, *supra*. Aquí la empleada estuvo en tratamiento médico inicial por espacio de dos meses y medio, luego del cual regresó a su trabajo. Tres meses más tarde, por instrucciones del Fondo del Seguro del Estado, volvió a recibir tratamiento médico, otra vez durante dos meses y medio. Regresó entonces a trabajar y tres meses y medio después, por orden del Fondo del Seguro del Estado, tuvo que recurrir por tercera vez a tratamiento médico, esta vez por espacio de seis meses y medio. Evidentemente, no se trata de una situación donde la empleada estuvo ausente de su empleo por más de doce meses continuos, como típicamente contempla el Art. 5a, *supra*. No puede invocarse, pues, su claro tenor literal para dilucidar la controversia en cuestión, como hace la mayoría en su opinión.

En vista de lo anterior, nos corresponde el deber de *interpretar* el Art. 5a, *supra*, para decidir cómo aplica éste a una situación distinta de la ordinaria. En esta labor nos obligan indefectiblemente las conocidas políticas de hermenéutica que exigen que las leyes remediales se interpreten con liberalidad, *Beauchamp v. Holsum Bakers of P.R.*, 116 D.P.R. 522 (1985), y que en casos como el de marras, cual-

quier duda debe resolverse a favor del obrero, *Vélez, Admor. v. Comisión Industrial*, 91 D.P.R. 480 (1964); *Agosto Serrano v. F.S.E.*, 132 D.P.R. 866 (1993).

En el caso ante nos, la empleada no llegó a estar ausente durante doce meses completos por razón de su tratamiento médico. El período continuo más largo de ausencia por enfermedad fue de seis meses y medio. Los tres períodos de tratamiento médico que provocaron ausencias del empleo duraron *un total* de once meses con 23 días, menos de los doce meses que exige el Art. 5a, *supra*, para que pueda negarse su reinstalación. Parecería, pues, que la empleada tiene derecho a volver a su trabajo, a no ser por la restrictiva interpretación que la mayoría le da a la ley; interpretación que da lugar a una seria anomalía: un empleado que esté ausente de su trabajo durante doce meses *corridos* por razón de un tratamiento médico tiene el derecho a su reinstalación cuando se le da de alta, pero si ese mismo empleado se reintegra ocasionalmente para cumplir con su trabajo y se le da de alta luego de un total de *menos* de doce meses de ausencia —no continuos— por tratamiento médico, los períodos en que se reintegró *le cuentan en contra* y permiten que se le deniegue su reinstalación. Así la intención de cumplir con la responsabilidad laboral en todo lo posible se penaliza; *el tiempo trabajado entre los períodos de recuperación se convierte en un elemento adverso a su derecho de reinstalación.* No hay nada en la ley que autorice este resultado incongruente y nuestros propios principios de hermenéutica nos requieren impedirlo. *Rivera Coll v. Tribunal Superior*, 103 D.P.R. 325 (1975); *Álvarez & Pascual, Inc. v. Srio. de Hacienda*, 84 D.P.R. 482 (1962).

A mi modo de ver, pues, ni la letra ni el espíritu de la ley permiten denegar la reinstalación en este caso. El tribunal de instancia resolvió el asunto correctamente y, tanto en derecho como en justicia, lo que procede es que confirme-

mos la sentencia de instancia. Como la mayoría sigue otro curso, que me parece jurídicamente equivocado, DISIENTO.