# 2001 DTA 163

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL II DE BAYAMON, PANEL I**

VICTOR RIVERA RIVERA
Querellante-Apelado

v.

INSULAR WIRE PRODUCTS CORP.
Querellada-Apelante

Núm. KLAN-00-01255

San Juan, Puerto Rico, a 15 de mayo de 2001

Panel integrado por su Presidente, el Juez Sánchez Martínez,
la Juez Ramos Buonomo y la Jueza Cotto Vives

Ramos Buonomo, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La Insular Wire Products, Corp. nos solicita la modificación de la sentencia emitida el 7 de julio de 2000 por el Tribunal de Primera Instancia, Sala Superior de Bayamón, mediante la cual declaró con lugar las reclamaciones instadas en su contra por el Sr. Víctor Rivera Rivera por despido injustificado, al amparo de la Ley 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. sec. 185 *et seq.*, y por despido en violación al período de reserva de empleo establecido en el Art. 5a de la Ley 45 de 18 de abril de 1935, según enmendada, Ley del Sistema de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 1 *et seq.* El tribunal apelado, no obstante, declaró sin lugar la reclamación por despido discriminatorio entablada por el Sr. Rivera Rivera al amparo de la Ley 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. sec. 146 *et seq.*

Por los fundamentos que pasamos a exponer, se modifica la sentencia apelada y, así modificada, se confirma.

### I

El Sr. Rivera Rivera trabajó en la Insular Wire como Supervisor del Departamento de Producción de Tubos hasta el 3 de febrero de 1994, fecha en que fue despedido de su empleo.

El 23 de marzo de 1994, el Sr. Rivera Rivera presentó una querella, contra la Insular Wire, al amparo de la Ley 100, *supra*, de la Ley 80, *supra*, y del Art. 5a de la Ley 45, *supra*, alegando que su patrono lo había despedido discriminatoriamente por razón de su edad, sin mediar justa causa y violando su derecho de reserva de empleo por encontrarse reportado ante el Fondo del Seguro del Estado recibiendo tratamiento médico al momento del despido. En virtud de lo anterior, reclamó, bajo los términos de la Ley 100, *supra*, y el Art. 5a de la Ley 45, *supra*, una compensación por concepto de los salarios dejados de percibir, una suma no menor de $300,000 por daños y angustias mentales, más el doble del importe de los daños sufridos, según dispuesto en la Ley 100, *supra*, la reinstalación a su empleo y $90,000 en concepto de honorarios de abogado. En la alternativa, el Sr. Rivera Rivera reclamó una compensación o mesada por despido injustificado al amparo de la Ley 80, *supra*.

Por su parte, la Insular Wire contestó la querella instada en su contra levantando como defensa que el despido del Sr. Rivera Rivera no fue injustificado, sino que, por el contrario, el mismo se debió a que éste se desempeñó negligentemente como jefe del departamento de producción de tubos de la empresa. Asimismo, la Insular Wire alegó que el despido del Sr. Rivera Rivera tampoco fue discriminatorio y que al momento del mismo, el referido empleado se había reintegrado a su trabajo sin notificar que recibía tratamiento por parte de la Corporación del Fondo del Seguro del Estado.

Luego de celebrar el juicio en su fondo, el Tribunal de Primera Instancia emitió la sentencia apelada declarando con lugar, en parte, la querella instada por el Sr. Rivera Rivera. Específicamente, el tribunal apelado determinó que la Insular Wire despidió sin causa justificada al referido empleado, pues dicho patrono no demostró que su despido estuvo motivado por su alegada conducta negligente al supervisar el departamento de

producción de tubos de la empresa. Sin embargo, el foro apelado concluyó que el despido del Sr. Rivera Rivera no fue discriminatorio. Esto es, que el despido del Sr. Rivera Rivera no fue motivado por razón de su edad.

Por último, el tribunal apelado determinó que, habida cuenta de que el Sr. Rivera Rivera fue despedido injustificadamente mientras estaba reportado ante el F.S.E. recibiendo tratamiento médico, la Insular Wire violó el período de reserva de empleo establecido en el Art. 5a de la Ley 45, *supra*. Por razón de todo lo anterior, el Tribunal de Primera Instancia determinó que correspondía conceder al Sr. Rivera Rivera la indemnización que le fuera más favorable o que le resultara más beneficiosa entre la mesada dispuesta en la Ley 80, *supra*, y los remedios provistos por el Art 5a de la Ley 45, *supra*.

En el caso de autos, el tribunal apelado concedió al Sr. Rivera Rivera, por ser más beneficioso, los remedios dispuestos en el Art. 5a, *supra*. En específico, el tribunal le impuso a la Insular Wire el pago al Sr. Rivera Rivera de $151,820 por salarios dejados de percibir, ■ $40,000 por los daños y angustias mentales sufridas y $47,955 en concepto de honorarios de abogado para un total de $239,755. Asimismo, el foro apelado ordenó la reinstalación del Sr. Rivera Rivera a su empleo.

Inconforme con lo anterior, la Insular Wire presentó el recurso de apelación que nos ocupa alegando que erró el foro apelado al concederle íntegramente al Sr. Rivera Rivera todos los remedios establecidos en el Art. 5a de la Ley 45, *supra*. Por otro lado, la Insular Wire sostiene que erró el tribunal apelado al conceder una indemnización excesiva por concepto de daños. Es decir, la Insular Wire cuestiona la valoración de los daños concedidos. ■

Por su parte, el Sr. Rivera Rivera presentó ante nos un alegato en oposición al anterior recurso en el cual, además de levantar argumentos contrarios a lo planteado por la Insular Wire en su escrito, sostiene que erró el foro apelado al haber denegado su reclamación por discrimen en el empleo al amparo de la Ley 100, *supra*. Asimismo, el Sr. Rivera Rivera presentó otro recurso de apelación (KLAN-00-01283) levantando nuevamente como error el anterior planteamiento.

Luego de que este Tribunal consolidara ambos casos, el Sr. Rivera Rivera desistió de su recurso de apelación, emitiendo este Tribunal una sentencia a tales efectos el 22 de febrero de 2001.

Ahora bien, contando con el alegato del Sr. Rivera Rivera en el caso KLAN-00-01255, procedemos a resolver el mismo sin ulterior trámite.

## II

En primer lugar, precisa señalar que, habida cuenta de que el Sr. Rivera Rivera desistió de su recurso de apelación en el cual cuestiona la determinación del foro apelado de que no procedía su reclamación por discrimen al amparo de la Ley 100, *supra*, no pasaremos juicio sobre el mismo. Esto, a pesar de que el Sr. Rivera Rivera también incluyó tal alegación en el alegato en oposición al recurso que nos ocupa. Adviértase que al desistir el Sr. Rivera Rivera de su recurso de apelación, desistió, específica y completamente, del planteamiento en cuestión.

Por tanto, sólo está en controversia si el foro apelado erró al conceder íntegramente al Sr. Rivera Rivera los remedios que concede el Art. 5a de la Ley 45, *supra*, y al valorar los daños concedidos a éste, en específico, los sufrimientos y las angustias mentales.

De otra parte, a pesar de ser harto conocido por las partes, exponemos los hechos pertinentes que motivan la presente reclamación, según surgen de la sentencia apelada, los cuales no están en controversia.

El 31 de enero de 1994, el Sr. Rivera Rivera, quien se desempeñaba como Supervisor del Departamento de Producción de Tubos de la Insular Wire, sufrió un accidente en su trabajo al cortarse en su mano izquierda con el filo de un tubo. Por razón de ello, éste se reportó al Fondo del Seguro del Estado (Fondo) para recibir tratamiento. Luego de examinar al Sr. Rivera Rivera, el Fondo determinó que éste debía continuar recibiendo tratamiento médico en descanso durante un mes.

No obstante y a pesar de que el Sr. Rivera Rivera estaba en descanso, la gerencia de Insular Wire lo llamó por teléfono para requerirle que se reportara a las instalaciones de dicha empresa. Así las cosas, el 3 de febrero de 1994, el Sr. Rivera Rivera, aunque no había sido dado de alta por el Fondo, asistió personalmente a su lugar de empleo porque temía que, de no hacerlo, podría perder su trabajo. Al llegar a la empresa, no se le permitió reintegrarse a sus funciones, sino que se le ordenó pasar directamente a la oficina del presidente. Allí, dicho funcionario lo despidió personalmente.

Ahora bien, precisa señalar que, el 9 de febrero de 1994, el Fondo dio de alta al Sr. Rivera Rivera sin incapacidad alguna.

Por otro lado, el Sr. Rivera Rivera devengó la suma de $23,659.27 durante el año 1993, año inmediatamente anterior al de la fecha de su despido. A su vez, a partir de ese momento, 3 de febrero de 1994, el referido obrero estuvo desempleado, por primera vez en 23 años, hasta el mes de diciembre de 1994. Durante todo este período, hizo múltiples gestiones para conseguir empleo, sin tener éxito. Además, se divorció de su esposa con quien había procreado 4 hijos; perdió el plan médico y tuvo que tomar Prozac por 6 meses, por prescripción médica, como tratamiento para aliviar la condición emocional que le provocó el despido de su trabajo.

A su vez, precisa puntualizar que durante el período de tiempo que transcurrió desde el mes de diciembre de 1994 hasta octubre de 1995, el Sr. Rivera Rivera solamente pudo conseguir un empleo temporero, por espacio de tres meses, en una firma, de nombre Bradbury, desempeñándose como ayudante de operador. En dicho trabajo cobró el salario mínimo. También trabajó alrededor de un mes con su hermano en un taller de rejas devengando un salario de $100 a $200 semanales, dependiendo del volumen de trabajo disponible.

Así las cosas, en octubre de 1995, el Sr. Rivera Rivera comenzó a trabajar en la empresa Tres Monjitas como operador de la máquina que hace el galón de leche. Su situación emocional causada por su despido, no había mejorado hasta ese momento. A partir del año 1998, su ingreso ha sido de $8.40 la hora y al día de hoy mantiene un trabajo estable.

## III

A tenor con todo lo anterior, evaluamos los planteamientos de error levantados por Insular Wire en su recurso de apelación.

En primer lugar, la Insular Wire sostiene que incidió el foro apelado al conceder íntegramente al Sr. Rivera Rivera los remedios provistos por el Art. 5a de la Ley 45, *supra*. Específicamente, la Insular Wire plantea que, habida cuenta de que el Sr. Rivera Rivera fue despedido durante el período de reserva de empleo dispuesto en el citado Art. 5a, éste no tiene derecho a la reinstalación en su empleo, ni a los salarios dejados de percibir. Añade que el único remedio que tenía disponible el Sr. Rivera Rivera era una compensación por los daños y perjuicios que el despido le hubiera causado.

Por otro lado, la Insular Wire argumenta que, por razón de que el Sr. Rivera Rivera fue dado de alta dentro del término de doce meses que provee como período de reserva de empleo el Art. 5a, *supra*, en el caso de autos, el referido período de reserva constituyó el tiempo transcurrido entre la fecha del accidente, 31 de enero de 1994, y la fecha en que el Sr. Rivera Rivera fue dado de alta por el F.S.E., 9 de febrero de 1994. Esto es, la Insular Wire alega que el período de reserva en el caso de autos fue de apenas nueve días.

Basado en todo lo anterior, la Insular Wire alega que, a tenor con lo resuelto por el Tribunal Supremo en el caso *García v. Darex P.R., Inc.,* 148 D.P.R. __ (1999), **99 J.T.S. 84**, los daños a compensar al Sr. Rivera Rivera se limitan a los sufridos dentro del período de reserva; es decir, nueve días. A su vez, la Insular Wire cuestiona la valoración de los daños que hizo el foro apelado. Para ello, alega que los hechos que encontró probado el foro apelado no justifican una cuantía de daños por angustias mentales de $40,000. Por último, sostiene que la compensación a pagar al Sr. Rivera Rivera se limita a la mesada y los honorarios de abogado correspondientes conforme a la Ley 80, *supra*, más una cuantía por los daños sufridos por éste durante el tiempo que duró, en el

caso de autos, la reserva de empleo.

En virtud de todo lo anterior, la Insular Wire nos solicita que eliminemos la partida concedida por concepto de salarios dejados de percibir y la orden que emitió el Tribunal de Primera Instancia a los efectos de que el Sr. Rivera Rivera fuera reinstalado en su empleo. Asimismo, también solicitó que modifiquemos la cuantía de daños concedida al Sr. Rivera Rivera, limitándola al período de reserva de nueve días, más la mesada y los honorarios de abogados computados a tenor con la Ley 80, *supra*.

Ahora bien, el Art. 5a de la Ley 45, *supra*, dispone lo siguiente:

*"En los casos de inhabilitación para el trabajo de acuerdo a las disposiciones de este Capítulo, el patrono vendrá obligado a reservar el empleo que desempeñaba el obrero o empleado al momento de ocurrir el accidente y a reinstalarlo en el mismo, sujeto a las siguientes condiciones:*

*(1) Que el obrero empleado requiera al patrono para que lo reponga en su empleo dentro del término de quince días contados a partir de la fecha en que el obrero o empleado fuere dado de alta, y siempre y cuando que dicho requirimiento no se haga después de transcurridos doce mese desde la fecha del accidente;*

*(2) Que el obrero o empleado esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que se solicite del patrono su reposición, y*

*(3) Que dicho empleo subsista en el momento en que el obrero o empleado solicite su reposición. (Se entenderá que el empleo subsiste cuando el mismo está vacante o lo ocupe otro obrero o empleado. Se presumirá que el empleo estaba vacante cuando el mismo fuere cubierto por otro obrero o empleado dentro de los treinta días siguientes a la fecha en que se hizo el requerimiento de reposición).*

*Si el Patrono no cumpliere con las disposiciones de esta sección, vendrá obligado a pagar al obrero o empleado, o a sus beneficiarios, los salarios que dicho obrero o empleado hubiere devengado de haber sido reinstalado, además le responderá de todos los daños y perjuicios que le haya ocasionado. El obrero o empleado, o sus beneficiarios, podrán instar y tramitar la correspondiente reclamación de reinstalación y/o daños en corte por acción ordinaria o mediante el procedimiento para reclamación de salarios, establecido en las secs. 3118 a 3132 del Título 32."*

11 L.P.R.A. sec. 7.

Como vemos, el artículo aquí citado establece dos tipos de protección para el obrero que sufre un accidente del trabajo, se reporta al Fondo y se acoge a los beneficios que ofrece la Ley 45, *supra*. En primer lugar, este artículo le impone al patrono el deber de reservarle al obrero, por un período ininterrumpido de doce meses, contados a partir de la fecha en que ocurre el accidente, el empleo en que se desempeñaba al momento de acontecer el mismo. En segundo lugar, el trabajador tiene derecho a que lo repongan en ese mismo empleo, una vez dado de alta por el Fondo, siempre y cuando éste así lo solicite al patrono y se cumplan con todas las condiciones establecidas en el Art. 5a, *supra, García v. Darex P.R., Inc., supra; Torres v. Star Kist Carribe, Inc.,* 134 D.P.R. 1024 (1994); *Santiago v. Kodak Caribbean, Inc.,* 129 D.P.R. 763 (1992). █

De lo anterior, resulta evidente que el Art. 5a, *supra*, le exige al patrono que reserve el empleo a un obrero lesionado mientras continúe inhabilitado y recibiendo tratamiento en el Fondo por un término de doce meses desde la fecha en que ocurra el accidente del trabajo. La mencionada reserva de empleo existe con total independencia de si en el futuro el obrero cualifica para ser reinstalado al mismo y, a su vez, impide que el obrero sea despedido dentro de dicho término. *García v. Darex P.R., Inc., supra.* Claro está, del propio Art. 5a, *supra*, surge que si el obrero es dado de alta por el Fondo antes de transcurrido el término de doce meses y no solicita la reposición conforme le exige el referido artículo, el patrono queda liberado de su obligación de reservar el empleo y puede despedir al empleado. *Id; Torres v. Star Kist Caribe, Inc., supra.* █

Ahora bien, si un obrero no satisface o cumple con los requisitos establecidos en el Art. 5a de la Ley 45, *supra*, de ordinario, y aunque haya sido despedido dentro del período de reserva, no tendrá derecho a ser reinstalado en su empleo, ni a recibir los salarios que hubiese devengado de haber sido reinstalado. *García v. Darex P.R., Inc., supra*. Sin embargo, este no es el único remedio que provee el Art. 5a, *supra*, al obrero lesionado ante el incumplimiento del patrono con las obligaciones que dicho artículo le impone. El referido artículo también dispone que el obrero puede reclamar todos los daños y perjuicios que el incumplimiento del patrono le haya ocasionado. *Id*.

Esto es, aun en la eventualidad de que el obrero lesionado no cumpla con los requisitos establecidos en el Art. 5a de la Ley 45, *supra*, dicho artículo le concede un remedio al obrero que ha sido ilegalmente despedido dentro del período de doce meses en que la ley requiere al patrono reservar la plaza, consistente en la compensación por los daños y perjuicios que tal conducta del patrono le ha causado. *García v. Darex P.R., Inc., supra*.

De lo anterior, resulta evidente que la Insular Wire está equivocada en cuanto a la interpretación que ésta le da a lo resuelto por el Tribunal Supremo en *García v. Darex P.R., Inc., supra*, a los efectos de que todo obrero que es despedido dentro del período de reserva dispuesto en el Art. 5a de la Ley 45, *supra*, no tiene derecho a ser reinstalado en su empleo, ni a recibir los salarios dejados de percibir, y que, por el contrario sólo tiene derecho a ser compensado por los daños y perjuicios que el despido le haya causado. Según la contención de la Insular Wire, para que un obrero tenga derecho a todos los remedios que provee el mencionado artículo, éste no puede haber sido despedido por su patrono durante el período de reserva. En otras palabras, que a pesar de que la ley le prohíbe al patrono despedir al empleado durante el período de reserva establecido por el Art. 5a de la Ley 45, *supra*, si dicho patrono lo despide durante el período en cuestión, el empleado no tiene derecho a recibir todos los remedios que provee el mencionado artículo, en específico, la reinstalación a su puesto y los salarios que hubiera devengado de haber sido reinstalado. Resulta evidente que bajo tal contención, se burlaría el propósito reparador del Art. 5a de la Ley 45, *supra*.

Como vimos, el caso de *García v. Darex P.R., Inc., supra*, establece que si un obrero no satisface los requisitos establecidos en el Art. 5a de la Ley 45, *supra*, de ordinario, y aunque haya sido despedido dentro del período de reserva, no tendrá derecho a ser reinstalado en su empleo, ni a recibir los salarios que hubiere devengado de haber sido reinstalado, y solamente tiene derecho a recibir una compensación por los daños causádoles por su despido. Adviértase que el Tribunal Supremo determinó que la reinstalación y los salarios dejados de percibir, no son los únicos remedios a que tiene derecho el obrero despedido dentro del período de reserva.

Ahora bien, precisa puntualizar que en el caso de *García v. Darex P.R., Inc., supra*, el obrero lesionado fue despedido dentro del período de reserva, pero fue dado de alta por el Fondo luego de vencido dicho período; es decir, pasado ya un año desde la fecha de su accidente. Por tanto, el obrero lesionado en aquel caso, debido al vencimiento de su período de reserva, no tenía derecho, aun en la eventualidad de que no hubiese sido despedido durante el referido período de reserva, a ser reinstalado en su puesto.

Tal no es la situación ante nos. Veamos.

En el caso de autos, de los hechos que encontró probados el Tribunal de Primera Instancia en la sentencia apelada, los cuales las partes no cuestionan y sobre los cuales no existe, controversia, surge que el Sr. Rivera Rivera sufrió un accidente en su empleo el 31 de enero de 1994, por lo cual se reportó al Fondo a recibir tratamiento médico, acogiéndose a los beneficios dispuestos en la Ley 45, *supra*. Sin embargo, el 3 de febrero del mismo año, la Insular Wire despidió al Sr. Rivera Rivera sin que éste hubiese sido dado de alta por el F.S.E. Es decir, la Insular Wire despidió al Sr. Rivera Rivera durante el período de reserva de empleo establecido en el Art. 5a de la Ley 45, *supra*. Así las cosas, el 9 de febrero de 1994, el Sr. Rivera Rivera fue dado de alta por el Fondo.

De los hechos aquí expuestos, resulta evidente que la Insular Wire violó el período de reserva dispuesto en el Art. 5a de la Ley 45, *supra*, al despedir al Sr. Rivera Rivera. Asimismo, una vez notificado por la Insular Wire

que había sido despedido, el Sr. Rivera Rivera, para ser acreedor de todos los remedios dispuestos en el Art. 5a de la Ley 45, *supra*, no tenía la obligación de solicitar a su patrono la reinstalación en su empleo cuando fue dado de alta por el Fondo sin aún haber vencido el período de reserva de empleo establecido también en el artículo citado. Esto es, resolvemos que una vez el Sr. Rivera Rivera fue notificado de su despido durante el período de reserva de empleo establecido por el Art. 5a de la Ley 45, *supra*, cesó su obligación de solicitar al patrono su reposición a su puesto cuando fuera dado de alta por el Fondo. Adviértase que tal, sería un acto vano e inútil.

A propósitos de la controversia aquí planteada, precisa señalar que, a pesar de que la Ley 45, *supra*, no atiende esta situación específicamente, ni la jurisprudencia ha tenido la oportunidad de expresarse al respecto, nos persuade la interpretación que le otorga Ruy N. Delgado Zayas al Art. 5a de la citada ley al comentar dicha controversia. Esto nos advierte de la siguiente manera:

*"La protección que el legislador pretendió ofrecerle a los trabajadores mediante la aprobación de esta disposición de ley cubre dos aspectos, según indicamos anteriormente, que constituye dos obligaciones básicas del patrono:*

*1. ...a reservar el empleo que desempeña el obrero o empleado al momento de ocurrir el accidente, y...*

*2. ...a reinstalarlo en el mismo, sujeto a las siguientes condiciones...*

*La primera obligación acarrea, además, como consecuencia obligada, la de no despedir a dicho obrero. Si el patrono está obligado a reservar el empleo del trabajador, entonces no puede en momento alguno despedirlo.*

*La segunda obligación del patrono puede surgir tanto cuando el trabajador haya sido despedido, como cuando no lo ha sido.*

*La diferencia consiste en que cuando el obrero está bajo tratamiento en el Fondo del Seguro del Estado, es dado de alta y el patrono no lo había despedido, el obrero tiene la obligación de informarle a dicho patrono su disponibilidad para trabajar, dentro de los quince (15) días, a partir de la fecha que fue dado de alta. Por el contrario, si a la fecha de ser dado de alta, ya el obrero fue despedido de su trabajo y notificado de ello, entendemos que el patrono ha provocado con su acción que no sea necesario cumplir con el requisito mencionado de reclamar trabajo. Es obvio que si el obrero ha sido despedido expresamente, éste no va a ir como cuestión práctica y lógica a solicitar su antiguo empleo, ya que el patrono le informó definitivamente su posición al respecto. Bien pudiera preguntarse, ¿qué empleo va a solictar?*

*Por lo tanto, el legislador no le puede haber exigido al trabajador un acto inútil o sin propósito alguno.*

*La causa del obrero, en situaciones como la antes indicada, surge con el despido injustificado de que es objeto, y no está supeditada a que el obrero en un vano empeño, al ser dado de alta, vaya a solicitar que se reponga en su empleo, de aquél que en forma expresa y sin justa causa fue despedido previamente.*

*¿Qué uso o función tendría dentro del marco protector de la ley, el que se cumpla formalmente con esa exigencia?*

*El propósito de ese requisito es evitar que el patrono pueda levantar como defensa, frente a la reclamación del trabajador, que no lo había repuesto en su empleo porque no sabía que éste había sido dado de alta y que estaba disponible para trabajar. En otras palabras, para establecer una fecha cierta como límite de la responsabilidad del patrono, ya que éste carece de la facultad de anticipar el futuro. Es decir, si transcurren los quince (15) días sin solicitar el obrero su reposición, éste pierde su derecho a ello y el patrono adviene libre para llenar el puesto del obrero o para no reservárselo más.*

*¿Qué necesidad hay de ésto cuando ya el patrono despidió al obrero? Es decir, cuando ya el patrono ha*

*decidido con sus propios actos, el no cumplir con la ley."*

Ruy N. Delgado Zayas, *Apuntes para el estudio de la legislación protectora del trabajo en el derecho laboral puertorriqueño,* San Juan, Ramallo Bros. Printing, Inc. 1989, 1996 y 1998, Cap. XI, págs. 190 a la 192.

Reiterando, resolvemos que al ser despedido expresamente por la Insular Wire durante el período de reserva de empleo establecido en el Art. 5a de la Ley 45, *supra,* el Sr. Rivera Rivera no tenía que cumplir con el requisito de solicitar a su patrono su reinstalación en su puesto dentro del término de quince días, contado a partir de la fecha en que fue dado de alta por el Fondo, para ser acreedor a todos los remedios dispuestos en el citado artículo. [5] Claro está, lo anterior es así porque el Sr. Rivera Rivera fue dado de alta por el Fondo antes del vencimiento del período de reserva de empleo de doce meses establecido por el Art. 5a de la Ley 45, *supra.* ▮ De haber sido dado de alta el Sr. Rivera Rivera posterior al vencimiento del período de reserva de empleo, hubiese sido de aplicación lo resuelto en los casos de *Santos v. Lederle Piperacillin, Inc.,* 152 D.P.R. __ (2001), **2001 J.T.S. 55,** y *García v. Darex P.R., Inc., supra,* en el sentido que éste no hubiese tenido derecho a la reinstalación en su empleo ni a los salarios que hubiese devengado de haber sido reinstalado y que solamente hubiera tenido derecho a los daños que el despido le hubiese causado, habida cuenta de que, debido al vencimiento del referido período de reserva, el Sr. Rivera Rivera hubiera perdido su derecho a ser reinstalado en su empleo, aun en la eventualidad de que no hubiese sido despedido dentro del mencionado período.

Por consiguiente, no incidió el foro apelado al concederle al Sr. Rivera Rivera todos los remedios que dispone el Art. 5a de la Ley 45, *supra,* inclusive la reinstalación a su empleo y el pago de los salarios dejados de percibir.

Por razón de lo anterior, habida cuenta de que el Sr. Rivera Rivera tiene derecho a recibir todos los remedios dispuestos en el Art. 5a de la Ley 45, *supra,* resulta innecesario expresarnos sobre los planteamientos levantados por la Insular Wire en el sentido de que los daños que tenía derecho a recibir el Sr. Rivera Rivera estaban limitados a los sufridos durante el período de reserva y que dicho período, en el caso de autos, según su contención, fue de apenas nueve días, desde la fecha del accidente hasta la fecha en que el Fondo dio de alta al Sr. Rivera Rivera. ▮

## IV

Como último error, la Insular Wire plantea que incidió el foro apelado al conceder una cantidad exagerada de daños al Sr. Rivera Rivera por concepto de los sufrimientos y angustias mentales.

La Insular Wire sostiene, pnmeramente, que los daños a compensar deben ser limitados a los nueve días que duró, según su contención, el período de reserva. Argumenta, además, que la brevedad de tal período no justifica la suma concedida en daños al Sr. Rivera Rivera. Como previamente hemos expuesto, tal planteamiento carece de mérito, ya que el Sr. Rivera Rivera tiene derecho a recibir todos los remedios dispuestos en el Art. 5a de la 45, *supra;* inclusive todos los daños sufridos a causa de su despido injustificado.

Por otro lado, la Insular Wire alega que erró el foro apelado al conceder una indemnización excesiva al Sr. Rivera Rivera por los daños sufridos en concepto de sufrimientos y angustias mentales cuando la prueba desfilada durante el juicio no sustentó tal cantidad. Argumenta, además, que, en el caso de autos, los daños sufridos por el Sr. Rivera Rivera fueron unas penas pasajeras de naturaleza sugestiva y, por tanto, no sustentan una partida de daños tan alta, máxime cuando en este caso no existen daños físicos que compensar. Esto es, la Insular Wire cuestiona la valoración de los daños que realizó el Tribunal de Primera Instancia.

Por tanto, la controversia a resolver gira en torno a si la partida concedida al obrero despedido injustificadamente durante el período de reserva dispuesto en el Art. 5a de la Ley 45, *supra,* en concepto de daños por sufrimientos y angustias mentales, fue exageradamente alta a tenor con la prueba presentada.

De otra parte, de ordinario, un tribunal apelativo no intervendrá con la valoración de daños que haga el

Tribunal de Primera Instancia, a menos que las cantidades concedidas sean exageradamente altas o ridículamente bajas. *Feliciano Polanco v. Feliciano González,* 147 D.P.R. ___ (1999), **99 J.T.S. 23** (Sentencia); *Rivera v. Tiendas Pitusa, Inc.,* 148 D.P.R. ___ (1999), **99 J.T.S. 107**. Lo anterior es así porque los tribunales de primera instancia están en mejor posición que los tribunales apelativos para evaluar la situación, por cuanto son los que tienen contacto directo con la prueba que a estos efectos presenta el que reclama los daños. *Id.; Rodríguez Cancel v. A.E.E.,* 116 D.P.R. 433 (1985).

Asimismo, los daños reclamados deben probarse con certeza razonable y precisión, sin recurrir a especulaciones. Esto es, la prueba debe establecer claramente la magnitud de los daños a los fines de poder valorizarlos correctamente. *Feliciano Polanco v. Feliciano González, supra; Saurí Rodríguez v. Colón Martínez,* 127 D.P.R. 900 (1991) (Sentencia).

En el caso de autos, el Sr. Rivera Rivera, a partir de su despido, estuvo desempleado por primera vez en 23 años, hasta el mes de diciembre de 1994. Durante todo este período, hizo múltiples gestiones para conseguir empleo, sin tener éxito; perdió el plan médico y tuvo que tomar Prozac por 6 meses, por prescripción médica, como tratamiento para aliviar la condición emocional que le provocó el despido de su trabajo. ▇

Por otro lado, precisa puntualizar que durante el período de tiempo que transcurrió desde el mes de diciembre de 1994 hasta octubre de 1995, el Sr. Rivera Rivera solamente pudo conseguir un empleo temporero por espacio tres meses en una firma de nombre Bradbury, desempeñándose como ayudante de operador. En dicho trabajo, cobró el salario mínimo. También trabajó alrededor de un mes con su hermano en un taller de rejas devengando un salario a razón de $100 a $200 semanales, dependiendo del volumen de trabajo disponible.

Así las cosas, en octubre de 1995, el Sr. Rivera Rivera comenzó a trabajar en la empresa Tres Monjitas como operador de la máquina que hace el galón de leche. Su situación emocional causada por su despido, no había mejorado hasta ese momento. Desde el año 1998 su ingreso ha sido de $8.40 la hora y al día de hoy mantiene un trabajo estable.

Ante los anteriores hechos, el foro apelado concedió al Sr. Rivera Rivera la suma de $40,000 por razón de las angustias mentales sufridas por éste a causa de haber sido despedido injustificadamente por la Insular Wire dentro del período de reserva de empleo.

Pero, al aplicar la anterior doctrina de derecho a los hechos previamente expuestos, encontramos que la cantidad de $40,000 concedida por el Tribunal de Primera Instancia a la Sr. Rivera Rivera por concepto de sus sufrimientos y angustias mentales, resulta excesiva. Si bien es cierto que el sólo hecho de encontrarse desempleado por primera vez en veintitrés años y no poder encontrar un trabajo estable por espacio de un año y nueve meses, todo por razón de haber sido despedido injustificadamente por un patrono, es causa suficiente para conceder una suma en daños por concepto de las angustias mentales sufridas, la prueba relacionada con los daños sufridos por el Sr. Rivera Rivera, según expuesta en la sentencia apelada, no refleja con precisión, ni certeza razonable en qué consistió su condición emocional.

La prueba solamente reflejó que el Sr. Rivera Rivera estuvo tomando, por seis meses, por prescripción médica, el medicamento llamado Prosac, ▇ como tratamiento para su condición emocional causada por su despido injustificado y que dicha condición no mejoró hasta que encontró un empleo estable en octubre de 1995, luego de haber sido despedido en febrero del año anterior. No obstante, la prueba no especificó, entre otras cosas, en qué consistió su condición emocional, su severidad, por cuánto tiempo necesitó un tratamiento médico para aliviarla y cómo afectó su vida y estado anímico.

Por razón de lo anterior, modificamos la sentencia a los únicos efectos de reducir a $20,000 la partida en daños que la Insular Wire tiene que pagar al Sr. Rivera Rivera por concepto de las angustias mentales sufridas por éste.

## V

Por los fundamentos antes expuestos, se modifica la sentencia apelada a los únicos efectos de rebajar a $20,000 la partida de daños que la Insular Wire tiene que pagar al Sr. Rivera Rivera por concepto de las angustias mentales sufridas por éste y, así modificada, se confirma.

Así lo acordó y manda el Tribunal y lo certifica la señora Subsecretaria General.

Gladys E. Ortega Ramírez
Subsecretaria General

### ESCOLIOS 2001 DTA 163

**1.** Los $151,820 por salarios dejados de percibir son calculados desde la fecha de su despido, 3 de febrero de 1994, hasta la fecha de la sentencia apelada, 7 de julio de 2000, a razón de $23,660 anuales, sueldo devengado por el Sr. Rivera Rivera durante el año 1993, año inmediatamente anterior al de la fecha de su despido.

**2.** Insular Wire, en momento alguno, ha cuestionado la determinación del tribunal apelado de que el despido del Sr. Rivera Rivera fue injustificado. Esto es, la Insular Wire acepta o se allana a la determinación de que despidió sin justa causa al Sr. Rivera Rivera.

**3.** La obligación del patrono de reservar el empleo de su obrero lesionado por un período ininterrumpido de doce meses, es independiente de la que el Art. 5a., *supra*, le impone al patrono de reinstalar a un obrero lesionado que satisfaga los requisitos que dicho artículo establece. Como veremos más adelante, el patrono que incumpla con el deber de reserva, despidiendo al obrero lesionado, le responderá por todos los daños y perjuicios que su incumplimiento produzca. *García v. Darex P.R., Inc., supra*.

**4.** Precisa señalar que un patrono puede válidamente despedir a un obrero o trabajador que ha sufrido un accidente del trabajo, por conducta ocurrida antes de ocurrir el accidente si hay justa causa, aun cuando el despido se produzca durante el período de reserva de empleo establecido en el Art. 5a de la Ley 45, *supra*. Esto es, el patrono puede despedir a un empleado inhabilitado y acogido al Fondo, durante los doce meses de reserva que establece el Art. 5a, *supra*, sólo si hay justa causa. *García v. Darex P.R., Inc., supra; Santiago v. Kodak Caribbean, Inc., supra*. Para determinar qué es justa causa en este contexto, se puede recurrir a las circunstancias enumeradas en el Art. 2 de la Ley 80, *supra*, 29 L.P.R.A. sec. 185 (b). *García v. Darex P.R., Inc., supra*.

Lo anterior no es de aplicación al caso de autos, pues, como sabemos, el tribunal apelado determinó que no existió justa causa para el despido del Sr. Rivera Rivera; es decir, que el despido de éste fue injustificado. A su vez, la Insular Wire no cuestiona en el presente recurso tal determinación. Por ende, toda nuestra discusión parte de la premisa que el despido del Sr. Rivera Rivera fue injustificado.

**5.** Véase, *Almódovar Marchany v. Wal-Mart Puerto Rico, Inc.*, KLAN-00-00529 - KLAN-00-00558, sentencia de 18 de diciembre de 2000; *Yordán Gómez v. Ponce Airlines Services, Inc.*, KLAN-98-00134, sentencia de 28 de octubre de 1998.

**6.** Esta interpretación del Art. 5a de la Ley 45, *supra*, es cónsona con lo reiterado por el Tribunal Supremo en el sentido de que por ser dicha ley un estatuto remedial, debe interpretarse liberalmente a favor del obrero. *Torres v. Star Kist Caribe, Inc., supra; Santiago v. Kodak Caribbean, Inc., supra*.

**7.** Precisa señalar que en el Tribunal Supremo aclaró en *García v. Darex, P.R., Inc., supra*, que, en la eventualidad de que un obrero no tenga derecho a ser reinstalado de su empleo, ni a recibir los salarios que hubiera devengado de ser reinstalado, en la determinación de daños a conceder por haber sido despedido durante el período de reserva, además de considerar los sufrimientos y angustias mentales del obrero, el tribunal deberá examinar si el contrato de trabajo del obrero contiene beneficios para cuando éstos se accidentan. Añadió que estos beneficios perdidos, desde el momento del despido sin justa causa hasta que venza la reserva, deberán considerarse al momento de fijar los daños y perjuicios. Véase, nota 10 de *García v. Darex, P.R., Inc., supra*. Resulta evidente que los beneficios bajo el contrato de empleo son los únicos daños a compensar que están limitados al período de reserva, mas no así los sufrimientos y angustias mentales.

**8.** Aunque se divorció de su esposa con quien había procreado 4 hijos, precisa aclarar que, a pesar de ser un suceso lamentable, no existe prueba que demuestre que el divorcio del Sr. Rivera Riera estuvo vinculado a su despido.

**9.** Prosac es un medicamento que es conocido como un antidepresivo. No obstante, en el caso de autos, el Sr. Rivera Rivera no presentó prueba alguna que demostrara un diagnóstico médico de depresión, la causa de la misma, el médico que así lo diagnosticó y que éste, a su vez, le haya recetado el referido medicamento como tratamiento para su condición.