González Rivera, Juez Ponente
*719 TEXTO COMPLETO DE LA SENTENCIA
Medina Auto Sales, Inc. (Medina Auto) solicita que revisemos la Resolución emitida el 2 de noviembre de 2000 por el Departamento de Asuntos del Consumidor (DACO), donde se ordenó la resolución del contrato de compraventa de un vehículo usado, marca Chevrolet Lumina del 1993, adquirido por la recurrida Tomasita Márquez Cubero (señora Márquez Cubero).
I
El 19 de febrero de 2000, la señora Márquez Cubero compró a Medina Auto un vehículo de motor usado marca Chevrolet, modelo Lumina, del año 1993, por el precio de $5,995.00 pagando la cantidad de $1,500.00 por concepto de pronto pago y financiando el remanente del precio de compra con el Banco Bilbao Vizcaya. El vehículo adquirido por ésta fire vendido sin garantía contractual por Medina Auto, (as is), en acuerdo por una reducción en el precio de compraventa. En dicha transacción, se le entregó a la compradora un documento titulado "Renuncia al Derecho de Saneamiento". Medina Auto aduce que mediante dicho documento la señora Márquez Cubero renunció a la garantía provista en el Reglamento de Garantías de Vehículos de Motor, Reglamento Núm. 4797 de 30 de septiembre de 1992, 10 D.P.R. see. 250.1701 et: seq. y al derecho de saneamiento por vicios ocultos cobijada en el Código Civil de Puerto Rico, 31 L.P.R.A. see. 3841.
Al mes de haberse realizado el contrato de compraventa, el vehículo comenzó a tener problemas en el tren delantero, se calentaba, la transmisión no cogía cambios, presentaba problemas en el radiador, no tenía filtro en el área del motor, se aceleraba, las bocinas del radio no funcionaban y las botellas se encontraban dañadas. La señora Márquez Cubero le comunicó a Medina Auto sobre los defectos encontrados en el vehículo, indicándole Medina Auto que el vehículo se había vendido sin garantía.
El 6 de junio de 2000, la señora Márquez Cubero presentó la querella ante DACO solicitando la resolución del contrato de compraventa con Medina Auto. El 20 de junio de 2000, el DACO realizó una inspección del vehículo, encontrando que éste tenía un motor más adelantado, le habían eliminado los censores, el radiador estaba roto, los abanicos directos, la transmisión tardaba en cambiar, los "shock absorbers" estaban malos, no tenía filtro del aire, las bocinas del radio no funcionaban en la parte del frente y tenía ruidos en el tren delantero. El inspector del DACO informó que el vehículo se encontraba en malas condiciones y que la calidad de los defectos en el vehículo eran defectos graves.
El 28 de octubre de 2000, la señora Márquez Cubero reparó el problema del radiador por cuenta propia por la cantidad de $100.00.
*720 La vista administrativa fue pautada para el 1 de noviembre de 2000. En dicha vista testificó la señora Márquez Cubero sobre los defectos encontrados en su vehículo. Sin embargo, no se presentó el testimonio del técnico automotriz de DACO que inspeccionó el vehículo. Medina Auto, a pesar de que no solicitó la comparecencia del técnico automotriz a la vista, ni tampoco presentó objeción al informe de éste, cuestionó en la vísta la falta de comparecencia del técnico alegando la ausencia del derecho a contrainterrogar al inspector sobre el contenido del informe realizado por éste.
El DACO emitió resolución en este caso el 2 de noviembre de 2000, archivada en autos el 3 de noviembre de 2000, ordenando la resolución del contrato de compraventa entre la señora Márquez Cubero y Medina Auto. Fundamentó su decisión en que la renuncia al derecho de saneamiento por vicios ocultos no fue válida en derecho.
El 22 de noviembre de 2000, Medina Auto presentó Moción de Reconsideración ante el DACO, no siendo acogida por éste. Ante tal acción, Medina Auto recurre ante nos el 4 de enero de 2001 mediante recurso de Revisión Judicial. En su recurso hace tres señalamientos de error: (1) erró la agencia al decretar que no fue válida la renuncia del comprador a reclamar por vicios ocultos; (2) erró en la apreciación de la evidencia al adjudicar que la compradora desconocía y no renunció a reclamar por los vicios ocultos y que tenía derecho a solicitar la resolución del contrato o su nulidad; y (3) erró al no reconocer compensación de daños por depreciación según la Ley Complementaria de Garantías de Vehículos de Motor, Ley Núm. 330 de 2 de septiembre de 2000.
II
Por estar relacionados los primeros dos (2) señalamientos de error, los discutiremos en conjunto.
La revisión judicial de decisiones administrativas suele circunscribirse a determinar si: (1) el remedio concedido por la agencia es el apropiado, (2) las determinaciones de hechos están sostenidas por evidencia sustancial en el expediente administrativo visto en su totalidad, y (3) las conclusiones de derecho son correctas. Los tribunales no deben intervenir en las determinaciones de hechos de un organismo administrativo, si están sostenidas por evidencia sustancial en el expediente administrativo. La evidencia sustancial es aquella relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión.
La parte afectada por una decisión administrativa deberá convencer al tribunal de que la evidencia en la cual la agencia basó su determinación de hechos no es sustancial. Este debe demostrar que en el récord administrativo existe otra prueba que reduce o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no puede concluirse que la determinación de la agencia fue razonable. Misión Industrial de Puerto Rico v. Junta de Planificación, 98 J.T.S. 79.
Al revisar las conclusiones de derecho de las agencias administrativas, el foro judicial debe considerar la experiencia y los conocimientos especializados que tiene el organismo administrativo sobre los asuntos que le han sido encomendados. Como se sabe, las conclusiones de derecho de la agencia, a diferencia de las determinaciones de hechos, pueden ser revisadas "en todos sus aspectos por el tribunal" sin sujeción a norma o criterio alguno. Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, 3 L.P.R.A. see. 2175. Esto no significa que el tribunal puede descartar libremente las conclusiones e interpretaciones de la agencia sustituyendo el criterio de ésta por el propio. De ordinario, los tribunales deben deferir las interpretaciones y conclusiones de los organismos administrativos. Misión Industrial v. Junta de Planificación, supra. Esta deferencia responde al reconocimiento de que las agencias administrativas poseen vasta experiencia y conocimiento especializado y son instrumentos necesarios para la interpretación de la ley. T-JAC v. Caguas Centrum, 99 J.T.S. 60; Miranda v. Comisión Estatal de Elecciones, 141 D.P.R. 775 (1996); Torres v. Starkist Caribe, Inc., 134 D.P.R. 1024 (1994); ARPE v. Ozares Pérez, 116 D.P.R._(1986); Molini & Vélez v. Negociado de Seguridad, 115 D.P.R. 183 (1984).
*721 Cuando la agencia haya actuado arbitraria o ilegalmente, o en abuso de su discreción, los tribunales apelativos intervendrán con la determinación administrativa. Rivera v. Supte. Policía de P.R., 98 J.T.S. 88; Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692 (1975).
III
Por otro lado, la Ley de Garantías de Vehículos de Motor, Ley Núm. 7 de 24 de septiembre de 1979, 10 L. P.R.A. 2051 et seq., se estableció con el propósito de "velar porque los intereses de los consumidores .sean salvaguardadas frente a los intereses del manufacturero y el distribuidor o vendedor." Artículo 3 de la Ley de Garantías de Vehículos de Motor, supra, 10 L.P.R.A. 2053. Esta ley faculta a DACO a adoptar reglamentos para implantar sus propósitos. Artículo 13 de la Ley de Vehículos de Motor, supra, 10 L.P.R.A. sec. 2063, En virtud de la misma, DACO promulgó el Reglamento de Garantías de Vehículo de Motor, supra, el cual establece que:
"El Departamento podrá, a opción del consumidor, decretar la resolución del contrato a reducir proporcionalmente su precio de venta de acuerdo a las disposiciones del Código Civil de Puerto Rico en aquellos casos en que el vendedor, distribuidor autorizado o concesionario, distribuidor de fábrica a fabricante, dentro de los términos de la garantía de fábrica, tuvo oportunidad razonable para reparar uno o más defectos, pero no quiso o no pudo corregirlos. Lo que constituye oportunidad razonable de reparar se determinará tomando en consideración las circunstancias particulares de cada caso." Reglamento de Garantías de Vehículo de Motor, supra, 10 D.P.R. sec. 250.1719 (3).
De igual manera, el mencionado reglamento dispone:
"Nada de lo dispuesto en este Reglamento limitará en forma alguna el derecho del consumidor a ejercer cualquier acción que le reconozcan las leyes generales o especiales del Estado Libre Asociado de Puerto Rico, así como las acciones de saneamiento por evicción, saneamiento por vicios ocultos y la acción redhibitoria que reconoce el Código Civil de Puerto Rico." Reglamento de Garantías de Vehículos de Motor, supra, 1$ D.P.R. sec. 250.1733.
A tenor con lo señalado por el Reglamento, las determinaciones de DACO deben estar en armonía con las disposiciones pertinentes del Código Civil y de la jurisprudencia interpretativa de las mismas. Véase además, Domínguez Talavera v. Caguas Expressway Motors, Inc., 99 J.T.S. 85.
Debido a que el contrato en controversia es uno de compraventa de un vehículo de motor, se rige por las disposiciones del Código Civil de Puerto Rico relacionadas a la compraventa de bienes muebles. Artículos 1334 al 1426 del Código Civil, 31 L.P.R.A. see. 3741-3951. Ferrer Delgado v. G.M.C., 100 D.P.R. 246 (1971).
En virtud de las referidas disposiciones del Código Civil, recibido el precio, corresponde al vendedor entregar la cosa y asegurar al comprador la posesión pacífica y útil de la misma. Artículo 1350 del Código Civil, 31 L.P.R.A. see. 3801. El propósito o causa de la venta para el comprador es adquirir la cosa para servirse de ella, y dicho propósito dejaría de realizarse si una vez hecha la entrega, el comprador se ve privado de la cosa o imposibilitado de aplicarla a los usos que le son propios. Ferrer Delgado v. G.M.C., supra. Por ello, surge la obligación de garantía que tiene el vendedor, la que el Código Civil llama obligación de saneamiento. Artículo 1363, 31 L.P.R.A. see. 3831.
La acción de saneamiento se ha definido como: una acción especial propia de los contratos de compraventa que refleja la obligación del vendedor de garantizar al comprador el uso y disfrute de la cosa objeto del contrato. Presenta dos modalidades: el saneamiento por evicción y el saneamiento por vicios ocultos en la cosa, Márquez v. Torres Campos, 111 D.P.R. 854 (1982).
*722 Ahora bien, los vicios ocultos son aquéllos que exceden la medida de las imperfecciones menores que cabe esperar normalmente en un producto determinado. No es necesario que dichos defectos imposibiliten el uso de la cosa vendida, siendo suficiente que merme notablemente su valor. García Viera v. Cuidad Chevrolet, 110 D.P.R. 158 (1980); DACO v. Marcelino Mercury, Inc., 105 D.P.R. 80 (1976); Artículo 1373 del Código Civil, 31 L.P.R.A. see. 3841.
Para que los vicios ocultos puedan ser objeto de saneamiento: (1) no deben ser conocidos por el adquirente, (2) el defecto debe ser grave o suficientemente importante para hacer la cosa impropia para el uso a que se le destina o que disminuya de tal modo este uso que, de haberlo conocido el comprador, no la habría comprado o habría dado menos precio por ella, (3) que sea preexistente a la venta, y (4) que se ejercite la acción en el plazo legal, que es el de seis meses contados desde la entrega de la cosa vendida. Ferrer Delgado v. G.M.C., supra.
Jurisprudencialmente se ha aclarado que el plazo de seis meses que establece el artículo 1379 del Código Civil, 31 L.P.R.A. see. 3847, para instar la acción de saneamiento por vicios ocultos, no se cuenta desde la fecha de la perfección del contrato, sino desde el día en que se interrumpieron las gestiones de inteligencia entre las partes, ya que las constantes reclamaciones y contestaciones de los interesados obstan a la prescripción. Ferrer Delgado v. G.M.C., supra; Casa Jaime v. Castro, 89 D.P.R. 702, (1963). Este plazo es de aplicación a aquellos contratos de venta en los cuales no háy un término de garantía para la reparación gratuita de la cosa vendida por cuenta del vendedor. Id. En los casos de saneamiento por defectos o vicios ocultos, "el comprador podrá optar entre desistir del contrato, abonándosele los gastos que pagó, o podrá rebajar una cantidad proporcional del precio, a juicio de peritos. Si el vendedor conocía los vicios o defectos ocultos de la cosa vendida y no los manifestó al comprador, tendrá éste la misma opción y además se le indemnizará por los daños y perjuicios si optare por la rescisión." Artículo 1375 del Código Civil, 31 L.P.R.A. see. 3843.
Aplicando esta normativa a los casos de vehículos de motor con vicios ocultos, el Tribunal Supremo ha resuelto que corresponde al comprador demostrar que el vehículo que compró no funciona normalmente y que la parte querellada tuvo oportunidad de corregir el defecto, pero no lo corrigió o no pudo corregirlo. Ferrer Delgado v. G.M.C., supra. La parte querellada sólo queda exenta de responsabilidad si como defensa afirmativa demuestra que el funcionamiento anormal es causado por actos del comprador. Id.
De no demostrar la responsabilidad del comprador por el defecto, éste tiene derecho a que se le reembolse el precio pagado por el vehículo y los gastos en que necesariamente incurrió por motivo de los defectos o vicios del mismo. Id. Si el vendedor del vehículo conocía los vicios o defectos, procede indemnizar al comprador por concepto de daños y perjuicios. El comprador también tiene derecho a que se le reembolsen las costas y a una suma razonable para honorarios de abogado. Id. El saneamiento no es sólo obligación del vendedor, sino también del fabricante, en virtud de la garantía. Márquez v. Torres Campos, supra; Ferrer Delgado v. G.M.C., supra. Sin embargo, si la vendedora descargó responsablemente su deber de poner en vigor la garantía del fabricante, pero el defecto de fábrica no era susceptible de reparación, correspondería condenar al fabricante a pagarle por cualquier cantidad que ésta se viera obligada a pagar al dueño del vehículo. Nadal Fremaint v. Hull Dobbs, 102 D.P.R. 653, (1974). A la luz de la doctrina expuesta, reexaminemos los hechos que informan esta causa.
IV
En el caso ante nos, el vehículo adquirido por la señora Márquez Cubero presentó defectos graves al mes de la compraventa, defectos que, según las determinaciones de DACO, eran preexistentes. Parte de los problemas fueron en la transmisión y el tren delantero, defectos considerados graves que imposibilitaban el uso eficaz del vehículo comprado. Dichos desperfectos imposibilitaron que la compradora utilizara el vehículo en forma normal y para el propósito que fue adquirido. Conforme a lo expuesto anteriormente, el vehículo adoleció de vicios ocultos.
La garantía establecida en el Reglamento de Garantías de Vehículos de Motor, supra, es renunciable *723 siempre y cuando dicha renuncia sea consciente, informada y por escrito, O sea, una renuncia realizada en forma inteligente. El foro recurrido concluyó que la renuncia de la querellante a reclamar por los vicios ocultos no fue inteligente. Aunque ésta tenía la intención de comprar el vehículo sin garantía, no tuvo una oportunidad razonable ni el conocimiento técnico para verificar si el mismo estaba en buenas condiciones. Su renuncia a reclamar saneamiento por vicios ocultos no fue consciente, ni informada, desconociendo los efectos que conllevaba tal renuncia.
La renuncia al derecho a reclamar saneamiento por vicios ocultos no fue suficiente en derecho, ya que no se consignó en el contrato, que la querellante fue instruida de lo que significaba tal renuncia, de su alcance legal y que una vez informada aceptó las condiciones. De tal manera, la señora Márquez Cubero optó por la resolución del contrato, derecho que le asiste según el derecho aplicable al presente caso.
Los recurrentes alegan que erró el DACO en la apreciación de la prueba desfilada en el caso de epígrafe. Tales decisiones tienen a su favor la presunción de legalidad y corrección y correspondía a las recurrentes demostrar que existía otra prueba en el récord administrativo que reducía o menoscababa el valor probatorio de la prueba en la cual se fundamentaron las determinaciones de hechos de la agencia. Sin embargo, el recurrente no ha señalado evidencia alguna obrante en el expediente administrativo que tuviese el efecto de menoscabar la prueba creída por el foro administrativo.
En el presente caso, las determinaciones de hechos están ampliamente sostenidas por la prueba. No se ha demostrado que las mismas sean irrazonables o constituyan un abuso de discreción. Por el contrario, el análisis de la prueba nos convence que el foro administrativo ejerció en forma adecuada su discreción. El error no fue cometido.
y
Por último, los recurrentes hacen un tercer señalamiento de error relacionado con no aplicar la compensación razonable por uso según lo establecido en Ley Complementaria de Garantías de Vehículos de Motor, Ley Núm. 330 de 2 de septiembre de 2000. Según la mencionada ley, se define la "compensación razonable por uso" como el número de millas atribuibles al consumidor hasta la fecha del acuerdo de conciliación multiplicado el precio de compra del vehículo y dividido por ciento veinte mil (120,000), excepto que en el caso de un vehículo recreativo deberá ser dividido por sesenta mil (60,000). De igual manera, dispone que esta ley aplicará a los vehículos de motor adquiridos en y a partir del 1 de enero de 1999. Basado en los hechos del caso, la señora Márquez Cubero adquirió el vehículo Chevrolet, Lumina el 19 de febrero de 2000, fecha que está comprendida en los términos establecidos en la ley.
Al momento de DACO resolver esta controversia, la Ley Complementaria, supra, era el derecho vigente en ese momento. Por tal razón, concluimos que DACO erró al no hacer la depreciación correspondiente al momento de la resolución del contrato y de responsabilizar a Medina Auto.
VI
Se expide el auto y se modifica la resolución recurrida a los fines de declarar el derecho de Medina Auto a que se le descuente la compensación razonable por uso según dispuesto en la Ley Complementaria de Garantías de Vehículos de Motor, supra, y se ordena la devolución de este caso a DACO para que proceda a realizar los procedimientos necesarios para la fijación de tal compensación. Así modificada, se confirma la Resolución emitida por DACO el 2 de noviembre de 2000.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
*724 ESCOLIO 2002 DTA 18
1. El Reglamento de Garantía de Vehículos de Motor define "as is” de la siguiente forma: "Usted está comprando un automóvil exactamente en las condiciones en que usted lo ve. El vehículo será vendido sin garantía alguna y usted corre el riesgo de tener que pagar la reparación de los defectos que tenga."