*754 Opinión de conformidad emitida por el Juez
Asociado Señor Rivera Pérez,
a la cual se une el Juez Asociado Señor Rebollo López.
La acción incoada por el señor Morales ante el Tribunal de Primera Instancia contra su patrono, el Banco Popular de Puerto Rico (BPPR), fue originalmente desestimada me-diante una sentencia sumaria. Correctamente, el Tribunal de Apelaciones revocó la sentencia apelada y estableció la existencia de controversias que ameritaban la celebración de un juicio plenario.
El Tribunal de Primera Instancia celebró el juicio según lo ordenado por el foro apelativo. Para ello, limitó la prueba a las controversias señaladas por el Tribunal de Apelaciones del modo siguiente:
(a) En lo que respecta a la Ley Núm. 45, si el señor Morales cumplía o no con el requisito establecido en el Art. 5-A referente a la necesidad de que al solicitar el empleado esté física y mentalmente capacitado para desempeñar las funciones que ocupaba antes de accidentarse.
(b) En cuanto a las causas de acción al amparo de la Ley Núm. 44 y la American with Dissabilities Act (Ley ADA), 42 U.S.C.A. see. 12101, la prueba versó sobre tres aspectos: si el señor Morales tenía o no el derecho a aco-modo razonable, si existían posiciones vacantes que éste podía haber desempeñado y si el BPPR estaba en posición de brindar dicho acomodo razonable.
(c) Finalmente, si en efecto, el despido del señor Morales fue justificado conforme a lo establecido en la Ley Núm. 80.
Presentados los alegatos correspondientes por las par-tes y desfilada la prueba, el foro primario determinó que el señor Morales estableció mediante prueba documental y testifical la existencia prima facie de un impedimento su-jeto a acomodo razonable. De este modo, dictó sentencia *755 mediante la cual resolvió que el BPPR violó las disposicio-nes de la Ley Núm. 44 de 2 de julio de 1985 y de la Ley ADA. Concluyó, además, que el BPPR no probó la existen-cia de justa causa para el despido, por lo que se configuró un despido contrario a la Ley Núm. 80 de 30 de mayo de 1976 y a la Ley de Compensaciones por Accidentes de Tra-bajo, Ley Núm. 45 de 18 de abril de 1935. Asimismo de-claró “ha lugar” la acción de daños y perjuicios de acuerdo con lo dispuesto en el Art. 1802 del Código Civil, 31 L.P.R.A. see. 5141, por violación a legislación especial y violación al derecho de intimidad.
No obstante, el BPPR apeló dicha sentencia ante el Tribunal de Apelaciones, quien revocó el dictamen del foro pri-mario y desestimó todas las causas de acción por el funda-mento de que la conducta del señor Morales fue de insubordinación y abandono de empleo, lo que constituyó justa causa para su despido.
Contando con el beneficio de prueba transcrita, evalua-mos cada una de las causas de acción incoadas por el señor Morales.
A. En primer lugar examinaremos la acción incoada al amparo de la Ley Núm. 45 para determinar si el BPPR violentó las disposiciones establecidas en el Art. 5-A de dicho estatuto, 11 L.P.R.A. see. 7.
La Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45, es un estatuto de naturaleza remedial que pretende brindar al obrero ciertas protecciones y benefi-cios, particularmente en el contexto de accidentes ocurri-dos en el escenario del trabajo.(1) Entre sus salvaguardas principales se destaca el Art. 5-A, que impone al patrono la obligación de reservar el empleo y reinstalar en éste a un empleado que haya sufrido un accidente del trabajo sujeto a las condiciones siguientes: (1) que antes de transcurrir doce meses desde la fecha del accidente, el lesionado re- *756 quiera al patrono que lo reponga en su empleo dentro del término de quince días desde la fecha que fue dado de alta; (2) que el empleado esté mental y físicamente capacitado para ocupar dicho empleo al momento de solicitar la reinstalación, y (3) que el empleo subsista en el momento en que el obrero o empleado solicite la reposición.(2)
En Rodríguez Rosa v. Méndez & Co, 147 D.P.R. 734, 739 (1999), expresamos que, para que aplique el Art. 5-A, supra, el obrero debe estar inhabilitado para desempeñar sus labores y su ausencia del trabajo sea recomendada o auto-rizada por el Fondo del Seguro del Estado (FSE). La pro-tección que brinda el Art. 5-A, supra, es para aquellos em-pleados que se incapacitan temporalmente a causa de un accidente o enfermedad ocupacional y que, por ello, no pue-den asistir a su lugar de empleo. Para esos obreros, el le-gislador estableció el período de reserva de empleo por doce meses, de manera que, cuando estuvieran aptos para incor-porarse a sus labores, su trabajo estuviera disponible para ellos. La incapacidad transitoria cesará cuando el obrero sea dado de alta, ya sea porque está curado, o porque se reconoce una incapacidad permanente que no mejorará con tratamiento médico o quirúrgico adicional. (3)
Sobre ese particular, la See. 7 del Reglamento Núm. 3966 del Departamento de Justicia de 8 de agosto de 1989, pág. 6(4) indica que la determinación de dar de alta a un trabajador ocurre cuando el Administrador, previos los dic-támenes médicos rendidos en cualquier caso, llega a la con- *757 elusion de que mayor tratamiento adicional no ha de mejo-rar la condición del obrero o empleado, por lo. cual lo procedente es darle de alta y fijar el grado de incapacidad con que haya quedado, si alguno.(5)
Anteriormente hemos resuelto que, tal expresión o de-terminación de alta no conlleva una adjudicación por parte del FSE en el sentido que el empleado está capacitado para desempeñar las funciones propias de su puesto.(6)
Sin embargo, esta determinación de alta emitida por el FSE constituye evidencia prima facie de que el empleado se encuentra capacitado para desempeñar las funciones de su antiguo puesto.(7) Presunción que, por ser rebatible, ad-mite prueba en contrario, es decir, el patrono puede, me-diante hechos específicos y razonables, demostrar que el empleado esta inhabilitado para trabajar.(8)
Como vemos, la protección ofrecida por el Art. 5-A al obrero no es absoluta.(9) En nuestra legislación laboral todo patrono tiene el derecho de presentar la defensa de justa causa ante un alegado despido injustificado.(10) A estos efectos, la inhabilidad para trabajar representaría justa causa para el despido de un empleado, salvo que pro-ceda proveerle acomodo razonable al amparo de. la Ley *758 ADA y la Ley Núm. 44.(11) Se trata de una cuestión proba-toria cuyo peso recae en el patrono tan pronto el empleado acredita que está autorizado para trabajar.(12)
En el presente caso, entre las defensas afirmativas, el BPPR adujo que el señor Morales, al no estar mental y físicamente capacitado para ocupar dicho empleo en la fe-cha en que solicitó la reinstalación, no cumplía el requisito que establece el Art. 5-A de la Ley Núm. 45, supra. Le asiste la razón.
Surge del expediente que el señor Morales solicitó su reinstalación dentro del término requerido por la Ley Núm. 45, es decir, quince días contados a partir de la fecha en que fuera dado de alta por el FSE.
Una vez fue dado de alta por el FSE, el 12 de junio de 1995 se reportó a trabajar y se le ubicó en su puesto de pagador-receptor. En esa fecha se le requirió, además, que compareciera a un adiestramiento dirigido a los empleados del área pagador-receptor.
Fue el propio señor Morales quien durante el juicio de-claró que no estaba mental ni físicamente capacitado para ejercer tales funciones. Asimismo, expresó su inconformi-dad con la decisión del BPPR de ubicarlo en la posición de pagador-receptor, ya que ello resultaba contrario a las re-comendaciones del FSE.(13)
Las evaluaciones médicas y ocupacionales, realizadas al señor Morales por los facultativos médicos y técnicos de rehabilitación del FSE, determinaron: “[l]a necesidad de reubicar al empleado a otro escenario, con tareas donde no esté expuesto a posibles asaltos, al manejo de valores en efectivo ni al contacto personal directo en público”,(14) “[solicitarnos que el caso sea evaluado a tono con los pro- *759 cedimientos administrativos del Banco Popular y en armo-nía con la legislación estatal y federal para las personas con impedimentos ...”.(15)
Todas las evaluaciones de los médicos del señor Morales certificaron consecuentemente que éste no podía volver a trabajar como pagador-receptor, que no le convenía desem-peñarse en áreas de contacto con público directo ni con manejo de dinero, ni en lugares que revivan la experiencia de un asalto.(16)
No obstante, la determinación de alta emitida por el FSE recalcó que el señor Morales tenía el potencial para seguir siendo productivo en el trabajo, por lo que reco-mendó al BPPR la concesión de un acomodo razonable. Por ende, es preciso señalar que, aunque el señor Morales no estaba capacitado para ser reinstalado en el mismo puesto, sí estaba capacitado para ejercer otras funciones con aco-modo razonable.
En este sentido, la propia sentencia emitida por el Tribunal de Primera Instancia expresó que el señor Morales estableció mediante prueba documental y testifical la exis-tencia prima facie de un impedimento sujeto a acomodo razonable.
La totalidad de la prueba estableció que el señor Morales, por su condición emocional, no estaba capacitado para ejercer las funciones de su puesto. Es por ello que estamos convencidos que la causa de acción al amparo de la Ley Núm. 45 es improcedente.
Sin embargo, en vista de que el señor Morales era una persona cualificada para el trabajo, con ciertas limitacio-nes, examinaremos la procedencia de su reclamación al amparo de la Ley Núm. 44 y la Ley ADA.
B. La “Americans with Disabilities Act” conocida por *760 sus siglas ADA, fue aprobada por el Congreso de Estados Unidos el 26 de julio de 1990. Dicho estatuto estableció la obligación de todo patrono de proveer un acomodo razona-ble en el lugar de trabajo a las personas con impedi-mentos.(17) La Ley Núm. 44 es su equivalente local. (18) Am-bas leyes persiguen propósitos similares: proteger a las personas con impedimentos físicos o mentales, prohibir el discrimen en eí empleo contra tales personas y ampliar sus oportunidades de trabajo.(19)
Luego de la aprobación de la Ley ADA, la Asamblea Le-gislativa de Puerto Rico(20) enmendó la Ley Núm. 44 para atemperar nuestra legislación con la Ley ADA, mediante la aprobación de la Ley Núm. 105 de 20 de diciembre de 1991.(21) En particular, dicha enmienda añadió el Art. 9 a la Ley Núm. 44 y estableció al patrono la obligación de
... llevar a cabo acomodos razonables en el lugar de trabajo para asegurar que se le permita a las personas con impedi-mentos cualificadas trabajar efectivamente al máximo de su productividad .... (Énfasis suplido.)
La Ley Núm. 44 define persona con limitaciones físicas como
... toda persona con un impedimento de naturaleza motora, mental o sensorial, que le obstaculice o limite su inicio o des-empeño laboral, de estudios, o para el disfrute pleno de la vida y que está cualificada para llevar a cabo las funciones básicas de ese trabajo o área de estudio, con o sin acomodo razonable.
Se entenderá, además, que es urna persona con impedimen-tos bajo la protección de este capitulo, toda aquella persona cuyo impedimento le limite sustancialmente su desempeño en una o más actividades principales del diario vivir, que la persona tenga un historial previo de esa condición o se le consi-dere que tiene dicho impedimento aún cuando no lo tiene.
*761 Para los propósitos de este capítulo se considerará como im-pedimento sensorial aquel que afecte sustancialmente, la au-dición, visión, tacto, olfato y el habla. (Enfasis suplido.)(22)
Por su parte, la Ley ADA define persona con impedi-mentos como aquella que, con o sin acomodo razonable, puede desempeñar las funciones esenciales de su empleo. De acuerdo a la Ley ADA, aquel empleado que cumpla con el criterio de impedimento antes mencionado tendrá dere-cho a que el patrono le provea acomodo razonable en su área de empleo.(23)
El acomodo razonable puede incluir el proveer instala-ciones accesibles y disponibles para personas con impedi-mentos, rediseño del trabajo, modificación de horario de trabajo, reasignar a uña posición vacante, y aquellos otros acomodos similares para personas con impedimentos.(24)
Conforme a la Ley Núm. 44, el acomodo razonable es el ajuste razonable que permite a una persona cualificada para el trabajo, pero con limitaciones físicas, desempeñar las labores asignadas a su puesto. El término incluye cual-quier acción que razonablemente le facilite el ajuste a una *762 persona con limitaciones físicas en su trabajo y que no re-presenta un esfuerzo extremadamente oneroso para el pa-trono en términos económicos. (25)
Para estar al amparo de la Ley Núm. 44 y que el pa-trono esté obligado a brindar acomodo razonable, el em-pleado tendrá que demostrar: (1) que es una persona con impedimento según lo define la ley, y (2) que está cualifi-cado para llevar a cabo las funciones básicas de ese tra-bajo, con el acomodo razonable o sin éste.(26)
De igual forma, al amparo de la Ley ADA un deman-dante tiene la carga de demostrar que es un individuo cua-lificado con impedimento (“qualified individual with a disability”), pero que con o sin acomodo razonable puede desempeñar las funciones esenciales de su puésto.(27)
Una vez el empleado ha formalizado una solicitud de acomodo razonable, el patrono está obligado a iniciar un proceso interactivo con dicho empleado para analizar si re-sulta posible conceder el remedio solicitado y la forma en que éste puede concederse.(28) La petición de acomodo ra-zonable no requiere que sea por escrito o cualquier otra forma en especial, basta que el patrono sepa de la necesi-dad del empleado de un acomodo razonable.(29)
La única excepción por la cual un patrono no está obli-gado, al amparo de la Ley ADA, a realizar un acomodo razonable es si éste le representa un esfuerzo extremada-mente oneroso (“undue hardship”).(30) No obstante, la eva-luación sobre si el acomodo razonable constituye un es-fuerzo extremadamente oneroso, descansa principalmente en la naturaleza y el costo del acomodo necesario, los re-cursos financieros de la entidad, el número de empleados y *763 el efecto de los gastos y recursos o el impacto en las opera-ciones de las instalaciones.(31)
Finalmente, el legislador incluyó al empleado que es ob-jeto de discrimen por incapacidad entre las clases protegi-das por la Ley Núm. 100 de 30 de junio de 1959.(32) A estos efectos, la Ley Núm. 44, en su Art. 13, establece que un empleado víctima de un despedido discriminatorio por ra-zón de su impedimento, tiene disponibles los remedios con-cedidos al amparo de la Ley Núm. 100. Citamos:
El Secretario del Trabajo y Recursos Humanos velará por el cumplimiento de [esta ley] en todo lo concerniente al empleo en unión al Procurador de las Personas con impedientos.
Los remedios, facultades, autoridad y procedimientos esta-blecidos en las sees. 146, 147, 147a, 148, y 149 del Título 29 estarán disponibles para el Secretario del Trabajo y Recursos Humano y para cualquier persona que entienda que ha su-frido discrimen en el empleo por razón de impedimento en violación a las disposiciones de las see. 501 et seq. de este título. 1 L.P.R.A. see. 511.
La acción civil provista por la Ley Núm. 100 establece que quien viole sus disposiciones incurrirá en responsabi-lidad civil por una suma igual al doble del importe de los daños que el acto haya causado, incluso -los daños emocionales.(33) La referida ley también dispone para la imposición de honorarios de abogados al patrono.
El Tribunal de Primera Instancia determinó, entre otras cosas, que a base de la evidencia documental presen-tada se podía razonablemente concluir que el señor Morales era una persona cualificada en el contexto de la Ley ADA y la Ley Núm. 45.
Acorde con la definición provista en estos casos, la con-dición emocional del señor Morales constituía un impedi-mento que limitaba sustancialmente su desempeño en una *764 o más actividades mayores del diario vivir, tales como res-pirar, alimentarse o dormir.(34)
De las determinaciones de hechos del foro primario surge que la certificación de alta con incapacidad, emitida por el FSE, recomendó la reubicación del señor Morales, decisión que el BPPR no cuestionó. Por el contrario, fue un hecho probado que la oficial de reclutamiento, la Sra. Carmen Chary Piñeiro Díaz, comunicó tanto al FSE como al señor Morales que precisaba de más tiempo para poder ofrecerle un acomodo razonable. (35)
Posteriormente, la Sra. Carmen Chary Piñeiro Díaz in-dicó al señor Morales que como no lo podían reubicar, le concederían una licencia sin sueldo, sin explicarle el al-cance y el efecto de ésta.
El testimonio ofrecido por la Sra. Carmen Chary Piñeiro Díaz, unido a la prueba documental presentada, evidenció que en la fecha para la cual el señor Morales estaba hábil para trabajar, existían tres posiciones vacantes, dos como representantes de servicios de telebanco y una de chofer. Del propio testimonio de la referida testigo surge que éste cualificaba para la posición de representante de servicios, posición que se realizaba telefónicamente y requería cono-cimiento de teclado.
A preguntas de la defensa, la testigo indicó que el can-didato para ocupar tal posición tenía que conocer sobre téc-nicas de ventas y que desconocía si el señor Morales era apto para ello. Sin embargo, no se contempló la necesidad de entrevistarlo ni de capacitarlo.
Situación similar ocurrió para la posición de chofer. La Sra. Carmen Chary Piñeiro Díaz adujo que no se le ofreció la posición debido a que el señor Morales no estaba *765 disponible. No obstante, surge del expediente que, para la fecha en que se estaban evaluando los candidatos para las posiciones vacantes, el señor Morales se encontraba bajo la licencia sin sueldo. Durante dicho período no recibió invi-tación alguna para ser considerado a estas posiciones va-cantes o puestos de natúraleza distinta o similar.(36)
Teniendo en cuenta que la Ley ADA dispone como una alternativa para el “acomodo razonable” la reubicación en una “posición vacante”, el Tribunal de Primera Instancia examinó las diligencias habidas por el BPPR para cumplir con tal requisito. Concluyó que el BPPR no demostró haber realizado gestiones afirmativas para tratar de reubicarle ni cumplió con las disposiciones reglamentarias correspon-dientes a la tramitación de una solicitud de acomodo razonable.(37) Asimismo, resolvió que conforme a la prueba desfilada y la credibilidad otorgada a los testigos, el BPPR no presentó prueba alguna que sostuviera que el señor Morales no estaba capacitado para ejercer en dichas vacantes.(38)
En vista de estas actuaciones, el foro primario concluyó que el BPPR no demostró de manera fehaciente que la reubicación del señor Morales constituía un esfuerzo de-masiado oneroso de manera que se le pudiese eximir del cumplimiento de esta obligación, por lo cual concluyó que el despido del señor Morales fue discriminatorio.
*766 No obstante, el BPPR alegó que medió justa causa para el despido del señor Morales, ya que el empleado abandonó su empleo.
Es norma reiterada que no existe una prohibición abso-luta para el despido de un empleado.(39) Como regla general, un patrono puede despedir a un empleado contratado sin tiempo determinado, en cualquier momento, con justa causa o sin causa justificada. Sin embargo, si lo hace sin causa justificada, estará obligado, ante el reclamo del ex empleado perjudicado, a indemnizarle con la correspon-diente compensación por despido injustificado que dispone el Art. 1 de la Ley Núm. 80.(40) De este modo, se cumple con el propósito de proteger la tenencia de empleo y desalentar la incidencia de despidos injustificados.(41)
La Ley Núm. 80 no establece las modalidades constitu-tivas de despido injustificado. En su lugar, ofrece unas nor-mas y guías que ayudan a determinar lo que constituye justa causa.(42) A estos fines, el Art. 2 de la Ley Núm. 80 (29 L.P.R.A. sec. 185b), dispone como causales de despido de un empleado, las siguientes:
(a) Que el obrero siga un patrón de conducta impropia o desordenada.
(b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento.
(c) Violación reiterada por el empleado de las reglas y regla-mentos razonables establecidos para el funcionamiento del es-tablecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.
(d) Cierre total, temporero o parcial de las operaciones del establecimiento.
(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o *767 maneja por el establecimiento y los cambios en los servicios rendidos al público.
(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganan-cias, anticipadas o que prevalecen al ocurrir el despido.
Subsiguientemente, el referido artículo establece la base conceptual de lo que constituye “justa causa” para despedir, y citamos:
No se considerará despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada, con el buen y normal funcionamiento del establecimiento. (Enfasis suplido.)(43)
De dicho estatuto se puede colegir que el principio rector que gobierna el despido por justa causa es aquel que delimita las circunstancias en que éste se produce.(44) Así pues, se entenderá como justa causa, aquella que tiene su origen en alguna razón o motivo vinculado a la ordenada marcha y normal funcionamiento de la empresa.(45)
Además, la jurisprudencia ha enmarcado el concepto de justa causa como aquella fundada en las necesidades de la empresa y que pueda ser descrita como una transacción lícita y en el curso de los negocios.(46)
Acorde con su propósito, la Ley Núm. 80 establece que, cuando el patrono interpone como defensa afirmativa ha-ber mediado justa causa para el despido, le corresponde entonces probar, por preponderancia de prueba, que el des-pido estuvo justificado.(47) Esto es, probar que la no ocu- *768 rrencia del hecho es más probable que su ocurrencia. (48) Si el patrono no presenta evidencia que derrote el hecho pre-sumido, o sea, que el empleado fue despedido sin justa causa, el tribunal debe aceptar la existencia de tal hecho. Es decir, que el empleado fue despedido sin justa causa.(49)
En el presente caso el BPPR alegó como justificación para el despido del señor Morales que, una vez concedida la licencia sin sueldo, éste hizo caso omiso a las solicitudes requeridas sobre su estado de salud, lo que constituyó una violación a las normas generales de trabajo. El BPPR in-terpretó dicha actuación como un abandono de trabajo y, por ende, una renuncia. Además, expresó que el señor Morales mantenía una actitud impropia y desordenada.
Sin embargo, fue un hecho probado y no rebatido que el señor Morales, una vez contrató su representación legal, comunicó al BPPR que éste sería el cauce para las siguien-tes comunicaciones. Constan en el expediente las cartas remitidas por su representación legal al BPPR, informando lo referente a su condición de salud y deseos de reubicación. Asimismo, se evidenció que la esposa del señor Morales se mantuvo en comunicación con el BPPR.
El Tribunal de Primera Instancia entendió que el reque-rimiento de una certificación médica por ausencia era im-procedente, pues éste no asistía a su trabajo por permane-cer sujeto a la licencia sin sueldo que el BPPR le impuso.
No consta en el expediente de trabajo del señor Morales evaluación negativa alguna que justifique o demuestre su alegado patrón de conducta impropia y desordenada. Más aún, de haber sido ésta la razón, el BPPR pudo no haberle reinstalado una vez fue dado de alta por el FSE, y no lo hizo.
El foro primario concluyó que el BPPR no pudo justifi- *769 car satisfactoriamente las razones para el despido del se-ñor Morales, ni demostró la alegada renuncia del empleado.
Por otro lado, durante el interrogatorio a los testigos del BPPR,(50) dicho foro sentenciador se percató de que el BPPR otorgó la licencia sin sueldo en contravención a su política institucional. Igualmente, determinó que el BPPR no cumplió con las normas contenidas en su Manual sobre Normas Generales de Empleados, las cuales contemplan una entrevista final previo a un despido. (51)
Ante estos hechos, el Tribunal de Primera Instancia concluyó que el BPPR no demostró que el señor Morales violara alguna disposición reglamentaria de la institución bancaria y que las actuaciones aludidas no satisficieran los criterios de razonabilidad que constituyen justa causa para su despido contenidos en el Art. 2 de la Ley Núm. 80, supra. No obstante, el foro intermedio apelativo revocó esta sentencia. Discrepamos de este proceder.
Considerando específicamente que en esta causa de ac-ción la fuente mayor de prueba lo fue el testimonio de los testigos presentados por las partes, en ausencia de error manifiesto, pasión, prejuicio, parcialidad o circunstancias extraordinarias que surjan del expediente, procede confir-mar la decisión emitida por el Tribunal de Primera Instancia.
Dicho tribunal se encuentra en una posición privile-giada para examinar, aquilatar y apreciar la prueba desfi-lada ante sí.(52) Por tal razón y en consideración a la opor-tunidad de ver y escuchar a los testigos,. su apreciación merece gran respeto y deferencia. (53)
*770 En situaciones como la presente, en las cuales la credi-bilidad de los testigos ha sido dirimida, el foro apelativo no debió descartar y sustituir las determinaciones pondera-das del Tribunal de Primera Instancia por sus propias apreciaciones, máxime cuando no encontramos en el expe-diente evidencia documental que sostenga la posición del BPPR.
C. Por último, consideraremos la prueba presentada en cuanto a la causa de acción por daños y peijuicios al amparo del Art. 1802 del Código Civil de Puerto Rico, supra.
El Tribunal de Primera Instancia declaró “ha lugar” la reclamación de daños por violación a la intimidad y por violación a la política pública contenida en la Ley Núm. 44 que prohíbe el despido de personas con impedimentos. El señor Morales basó su reclamación en daños y perjuicios en que su despido se hizo con el propósito de frustrar una clara política pública, a saber, la Ley Núm. 44, y alegó, además, una violación a su derecho de intimidad. No nos persuade.
Aunque una causa de acción por violación a los derechos a la intimidad, dignidad del ser humano y protección contra riesgos contra la integridad personal constituye una excepción al remedio exclusivo provisto por la Ley Núm. 80, hemos resuelto que para probar las alegaciones de una causa de acción por violación al derecho a la intimidad ori-ginada en el contexto de una relación laboral, el recla-mante debe presentar prueba de actuaciones concretas del patrono que incidan en su vida íntima o familiar. (54) Asi-mismo, el reclamante tiene que demostrar que las actua-ciones del patrono son ajenas al desempeño normal en el escenario de trabajo y que éstas constituyen ataques noci-vos a su dignidad e integridad personal o familiar. (55)
*771 En el caso ante nos, la única prueba que el señor Morales ofreció para sostener la alegada violación a su derecho de intimidad fue el hecho de que la vicepresidenta de la División de Recursos Humanos, la Lie. Emily Arean, se dirigió a las oficinas del FSE para solicitar que reabrieran el caso siquiátrico de su empleado. El señor Morales alegó que con dicha actuación se pretendió manipular su infor-mación médica confidencial con el propósito de alargar su tratamiento médico y posteriormente justificar su despido.
Surge del expediente que el FSE no accedió a la solici-tud efectuada por la Lie. Emily Arean, por ser contrario al Art. 3(d) de la Ley de Compensaciones por Accidentes de Trabajo, Ley Núm. 45 (11 L.RR.A. sec. 3(d)), el cual esta-blece que sólo se tramitaran solicitudes de reapertura soli-citadas por el lesionado.
Los hechos presentes no nos permiten apreciar los da-ños concretos que esta actuación provocó en el señor Morales. No podemos olvidar que estamos ante una recla-mación de daños según el Art. 1802 de nuestro Código Civil, supra, la cual como toda reclamación debe sostenerse a base de la prueba. Consideramos que las alegaciones aquí planteadas no son suficientes para configurar una viola-ción a los derechos de intimidad del señor Morales.

 Soc. de Gananciales v. Royal Bank de P.R., 145 D.P.R. 178 (1998).

 Torres v. Star Kist Caribe Inc., 134 D.P.R. 1024 (1994); Santiago v. Kodak Caribbean, Ltd., 129 D.P.R. 763 (1992); R.N. Delgado Zayas, Apuntes para el estudio de la legislación protectora del trabajo en el derecho laboral puertorriqueño, San Juan, [ed. de autor], 2005, págs. 191-192.

 Torres v. Star Kist Caribe, Inc., supra; Gámbaro Ramos v. F.S.E., 112 D.P.R. 304, 306 (1982); Ríos Rivera v. Comisión Industrial, 108 D.P.R. 808, 814 (1979); Rivera Rivera v. Comisión Industrial, 101 D.P.R. 712, 717 (1973).

 Dicho reglamento fue promulgado el 10 de octubre de 1989 para establecer de forma clara y específica los derechos que confiere la Ley de Compensaciones por Accidentes de Trabajo, Ley Núm. 45.

 Según explica el Lie. Ruy N. Delgado Zayas, en vista de los propósitos de la ley y de que la ley en ningún momento habla de alta definitiva, sino de “alta”, resulta importante señalar que la reserva-y obligación de reinstalar es la misma para el empleado que lo dan de alta definitiva como para el que lo dan de alta con trata-miento, conocido como “CT”. Véase Delgado Zayas, op. cit., pág. 194.
Asimismo, señalamos en Rivera v. Blanco Vélez Stores, 155 D.P.R. 460 (2001), que un obrero en “CT” cumple con los requisitos que preceptúa el Art. 5-A, 11 L.P.R.A. see. 7, pues de otro modo no se explica cómo el Fondo del Seguro del Estado (FSE) ha dado de alta para trabajar mientras recibe tratamiento.

 Cruz González v. Pep Boys, 169 D.P.R. 829 (2007).

 Cruz González v. Pep Boys, supra. En esta ocasión resolvimos que esta pre-sunción rebatible se fundamenta en que el objetivo del tratamiento médico que el FSE ofrece al empleado lesionado es facilitar su recuperación y, por ende, el retorno a sus labores.

 I.d. -

 Santiago v. Kodak Caribbean, Ltd., supra.

 La Ley Núm. 45 no contiene una definición de lo que constituye justa causa para el despido. Es por eso que se acogen las circunstancias enumeradas en la Ley Núm. 80.

 Delgado Zayas, op. cit., pág. 192.

 Íd.

 Transcripción escrita de la vista en su fondo, Testimonio del señor Heberto Morales Bengochea, Apéndice de la Petición de certiorari, 3ra pieza, págs. 831-836.

 Carta suscrita por el Sr. Héctor Rivera Ostolaza, Especialista en Rehabili-tación del FSE, Apéndice de la Petición de certiorari, Ira pieza, pág. 108.

 Certificación emitida por el doctor Ifarraguerri el 2 de noviembre de 1994, Apéndice de la Petición de certiorari, Ira pieza, pág. 103.

 Certificación emitida por el Dr. Juan G. Soto Silva el 20 de junio de 1995, Apéndice de la Petición de certiorari, Ira pieza, pág. 119.

 42 U.S.C.A. sec. 12112(a).

 1 L.P.R.A. see. 505.

 García v. Darex P.R., Inc., 148 D.P.R. 364 (1999); 42 U.S.C.A. sec. 12112(b).

 Ríos v. Cidra Mfg. Oper. of P.R., Inc., 145 D.P.R. 746 (1998).

 1 L.P.R.A. see. 501 et seq.

 1 L.P.R.A. 501(e).

 “The term ‘qualified, individual with a disability’ means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchápter, consideration shall be given to the employer’s judgment as to what functions of a job are. essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.” 42 U.S.C.A. sec. 12111(8).
“The term ‘disability’ means, with respect to an individual
“(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
“(B) a record of such an impairment; or
“(C) being regarded as having such an impairment.” 42 U.S.C.A. sec. 12102(2).

 “The term ‘reasonable accomodation’ may include:
“A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities and
“B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipments or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C.A. sec. 121U(9)(A) y (B).

1 L.P.R.A. sec. 501(b).

 García v. Darex P.R., Inc., supra.

 Cleveland v. Policy Management Systems Corp. et al., 526 U.S. 795 (1999).

 A. Acevedo Colom, Legislación Protectora del Trabajo Comentada, 7ma ed., [ed. del autor], 2001, págs. 285-286.

 Íd.

 42 U.S.C.A. sec. 12111(10)(A).

 42 U.S.C.A. sec. 12111(10)(B).

 29 L.P.R.A. sec. 146 et seq.

 García Pagan v. Shiley Caribbean, etc., 122 D.P.R. 193 (1988).

 Sentencia emitida por el Tribunal de Primera Instancia, Apéndice de la Petición de certiorari, 2da pieza, pág. 612.

 ei 12 de junio de 1995, el FSE dio de alta con incapacidad al señor Morales. En dicha semana, éste se presentó a trabajar, fue asignado al área de cajeros y enviado a tomar un adiestramiento para cajeros. Transcripción escrita de la vista en su fondo, Apéndice de la Petición de certiorari, 3ra pieza, pág. 860.

 Estas vacantes surgen en las fechas del 19 de octubre al 26 de octubre de 1995. El señor Morales fue colocado en licencia sin sueldo desde el 12 de junio 1995 hasta el .14 de febrero de 1996, fecha cuando fue efectivo su .despido.

 Conforme al testimonio de la oficial de reclutamiento del BPPR, Sra. Carmen Chary Piñeiro Díaz, en los casos de empleados con impedimentos, el Departamento de Recursos Humanos mantiene una lista de las solicitudes de acomodo razonable. Dicho departamento tiene el deber de estar atentos al surgimiento de alguna posición que éste pueda desempeñar. De este modo, de surgir una vacante, se procede a llamar al empleado, de modo que éste llena una solicitud. Si del expediente, no se desprende información suficiente para determinar si reúne los requisitos mínimos, se procede a llamar al empleado para que actualice su información y si, con ésta reúne los requisi-tos y demás condiciones, se refiere entonces para la entrevista en el Departamento o sección que tiene la posición vacante. Transcripción escrita de la vista en su fondo, Apéndice de la Petición de certiorari, 3ra pieza, pág. 1094.

 Determinaciones de hechos de la sentencia emitida por el Tribunal de Pri-mera Instancia, Apéndice de la Petición de certiorari, 2da pieza, pág. 612.

 Santiago v. Kodak Caribbean, Ltd., supra.

 García Burgos v. A.E.E.L.A., 170 D.P.R. 315 (2007).

 29 L.P.R.A. sec. 185a. Véase, además, Delgado Zayas, op. cit., pág. 133.

 Íd.

Art. 2 de la Ley Núm. 80 (29 L.P.R.A. sec. 185b.

 Srio. del Trabajo v. G.P. Inds., Inc., 153 D.P.R. 233, 244 (2001).

 Srio. del Trabajo v. I.T.T., 108 D.P.R. 536 (1979).

 Narváez v. Chase Manhattan Bank, 120 D.P.R. 731, 739 (1988); Srio. del Trabajo v. I.T.T, supra.

 El Art. 11 de la Ley Núm. 80 (29 L.P.R.A. sec. 185k(a)) dispone, en lo perti-nente, que “[e]n toda acción entablada por un empleado reclamando los beneficios dispuestos por las secs. 185a a 185m de este título, el patrono vendrá obligado a alegar, en su contestación a la demanda, los hechos que dieron origen al despido y probar que el mismo estuvo justificado para quedar eximido de cumplir con lo establecido en la sec. 185a de este título”. (Enfasis suplido.)

 Ibáñez v. Molinos de P.R. Inc., 114 D.P.R. 42 (1983).

 Véase, además, la Regla 14 de Evidencia de Puerto Rico, 32 L.P.R.A. Ap. 17.

 Testimonio de la Sra. Carmen Chary Piñeiro Díaz, Transcripción escrita de la vista en su fondo, Apéndice de la Petición de certiorari, 3ra pieza, págs. 1093-1107.

 Manual de Empleados del BPPR, Sec. XII, pág. 98. Apéndice de la Petición de certiorari, Ira pieza, pág. 386 et seq.

 Pueblo v. Torres Rivera, 137 D.P.R. 630, 640 (1994).

 Rolón v. Charlie Car Rental, Inc., 148 D.P.R. 420, 432 (1999).

 Soc. de Gananciales v. Royal Bank de P.R., 145 D.P.R. 178 (1998).

 Íd.